HANSEL et al., Appellants and Cross–Appellees,

v.

CREATIVE CONCRETE & MASONRY CONSTRUCTION
COMPANY, Appellee and Cross–Appellant.

[Cite as *Hansel v. Creative Concrete & Masonry Constr.
Co.*, 148 Ohio App.3d 53, 2002-Ohio-198.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–689.

Decided Jan. 24, 2002.

Innis & Barker Co., L.P.A., and Richard L. Innis, for appellants and cross-appellees.

Rick J. Abraham, for appellee and cross-appellant.

---

TYACK, Presiding Judge.

{¶ 1} On August 19, 1999, Michael and Carolyn Hansel filed a complaint in the Franklin County Court of Common Pleas against Creative Concrete & Masonry Construction Company ("Creative Concrete"). The parties had entered into a contract for the installation of a 4.5-inch-thick concrete driveway at the Hansels' residence. The complaint averred that shortly after the work was completed, the Hansels discovered that the thickness of the concrete driveway was not as agreed upon and that there was no gravel base under most of the driveway. The complaint set forth claims of breach of contract, negligent construction, fraud and violation of the Ohio Consumer Sales Practices Act.

{¶ 2} The case was referred to a magistrate. A trial was held before the magistrate and on March 21, 2001, the magistrate issued a decision. The decision noted that the Hansels' Ohio Consumer Sales Practices Act claim had been voluntarily dismissed prior to trial. The magistrate then addressed the issues relating to the Hansels' claims regarding the construction of the concrete driveway. The magistrate found, in essence, that there were problems with the driveway but that Creative Concrete had substantially complied with the terms of the contract. The magistrate then determined that the Hansels' damages were $1,206.

{¶ 3} The Hansels filed objections to the magistrate's decision, and Creative Concrete filed a memorandum contra. On March 30, 2001, Creative Concrete filed a motion for attorney fees pursuant to R.C. 1345.09(F)(1), which authorizes, in certain circumstances, an attorney-fees award to the prevailing party.

{¶ 4} On May 14, 2001, the trial court rendered a decision denying Creative Concrete's motion for attorney fees under R.C. 1345.09(F)(1). On this same date, the trial court rendered a decision and entry overruling the Hansels' objections to the magistrate's decision and adopting the magistrate's decision.

{¶ 5} The Hansels (hereinafter "appellants") have appealed to this court, assigning the following errors for our consideration:

{¶ 6} "1. The trial court erred in its computation of damages due the appellants.

{¶ 7} "2. The Magistrate's finding of substantial compliance is against the manifest weight of the evidence."

56

{¶ 8}  Creative Concrete (hereinafter "appellee") has filed a cross-appeal, assigning the following as error:

{¶ 9}  "The trial court erred in denying defendant–appellee's motion for attorney's fees."

{¶ 10}  As they are interrelated, appellants' first and second assignments of error will be addressed together.  Appellants contend that the trial court erred in adopting the magistrate's finding that appellee had substantially complied with the terms of the contract and in accepting the magistrate's computation of damages.  As indicated above, the magistrate found that although the concrete driveway did contain defects, substantial compliance existed.  The magistrate stated that the issue then became the proper measure of damages.  The magistrate concluded that the Hansels would be adequately compensated by damages based on repair of the driveway as opposed to a complete replacement of the driveway.  Using a formula based on the average thickness of the completed driveway (4 inches) compared to what was actually contracted for (4.5 inches), the magistrate arrived at a damages figure of $1,206 (the contract price was $10,855.10).

{¶ 11}  Appellants assert that the evidence showed that there were many problems with the driveway in addition to the thickness problem, that the driveway had completely failed, that substantial compliance had not occurred and that, therefore, complete replacement was the proper remedy.  We note first that the magistrate intermingled the concepts of substantial compliance and the proper method of measuring damages in breach-of-contract cases.  However, substantial compliance is not actually a damages issue.  Rather, it goes to whether or not breach has occurred.  Indeed, as this court stated in *Kersh v. Montgomery Developmental Ctr.* (1987), 35 Ohio App.3d 61, 62, 519 N.E.2d 665, a breach of one of several terms in a contract does not discharge the obligations of the parties to the contract, unless performance of that term is essential to the purpose of the agreement, and default by a party who has substantially performed does not relieve the other party from performance.

{¶ 12}  Stated another way, a party does not breach a contract when such party has substantially performed the terms of the contract, and mere nominal, trifling or technical departures are not sufficient to constitute breach. *Burlington Resources Oil & Gas Co. v. Cox* (1999), 133 Ohio App.3d 543, 548, 729 N.E.2d 398, citing *Ohio Farmers' Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph two of the syllabus.  For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract. *F.C. Machine Tool & Design, Inc. v. Custom Design Technologies, Inc.* (Dec. 27, 2001), Stark App. No. 2001CA00019, 2001 WL

1673702, citing *Wengerd v. Martin* (May 6, 1998), Wayne App. No. 97CA0046, 1998 WL 225107.

{¶ 13} In general, substantial compliance will support a recovery of the contract price less allowance for defects in performance or damages for failure to strictly comply with the contract. *Spitzer v. Forrester* (Oct. 19, 1981), Montgomery App. No. 7087, 1981 WL 2572, citing *Creith Lumber, Inc. v. Cummins* (1955), 163 Ohio St. 264, 56 O.O. 242, 126 N.E.2d 323, and *Wyandot Realty Co., Inc. v. Merchandise Wholesalers, Inc.* (Aug. 12, 1981), Montgomery App. No. 7166, 1981 WL 2878. See, also, *L.T.M. Builders Co. v. Jefferson* (1980), 61 Ohio St.2d 91, 97, 15 O.O.3d 127, 399 N.E.2d 1210, and *Thermal Master, Inc. v. Greenhill* (Sept. 29, 1987), Franklin App. No. 86AP–745, 1987 WL 17801. In this sense, the doctrine of substantial performance is related to damages issues.

{¶ 14} The issues in the case at bar involve whether the trial court erred in adopting the magistrate's finding of substantial performance and calculation of damages. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. This court is guided by the presumption that the findings of the trier of fact were correct, as the trier of fact is best able to view and observe the witnesses and to use such in weighing credibility. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 15} Appellants contracted with appellee for the construction of a concrete driveway at their residence. While it was appellants' residence, appellants parked heavy work trucks used in their business on the driveway. The contract called for, among other things, that the concrete be 4.5 inches thick and that wire mesh be used. The work was completed, and appellants gave appellee a check for the remaining balance. The check bounced, and this caused friction between the parties. However, appellants soon thereafter paid the full contract price of $10,855.10. Appellants became dissatisfied with the concrete driveway. Appellants believed that the concrete was not as thick as called for in the contract. Hence, appellants filed the present suit.

{¶ 16} The evidence showed that there were defects with the driveway such as cracking, scaling, and pitting and that these defects were largely due to appellee's failure to act in a workmanlike manner in finishing the driveway with the proper techniques. In addition, there were problems such as misplacement of the wire mesh and an uneven subbase. Further, core samples taken showed a range of thickness of the concrete of 3.4 to 4.6 inches, with an average thickness of 4 inches. The contract called for a thickness of 4.5 inches. Despite these

problems, the evidence does support the magistrate's conclusion that appellee had substantially performed under the contract in that the driveway had not failed in its essential purpose.

{¶ 17}   Appellants' expert did testify that there was significant damage after only one to two years and that the driveway's life expectancy would be substantially less than the normal 15- to 20-year life expectancy.   However, he further testified that the concrete itself was satisfactory.   In addition, he stated that the cracks could be sealed and that the scaling, "pop outs" and cracking would not improve *unless repair methods were utilized.*

{¶ 18}   Appellee's expert, an engineer, testified that all cracks and scaling can be repaired and that replacement was unnecessary.   Appellants' expert stated that he was not hired to opine about the repair possibilities; rather, his company was hired to evaluate the condition of the driveway.   However, he testified that there were three choices as to this driveway: (1) leave it like it is, and it would continue to deteriorate, (2) remove and replace it, or (3) utilize an approved repair method.   When asked when the driveway should be replaced or repaired, appellants' expert stated:

{¶ 19}   "Well, it is like this, the damage is going to continue to get worse with each successive exposure to freezing and thawing cycles.   The scaling is going to get worse.   The cracks that are there are pretty much at their extent except for where the areas are not supported by sub base.   There will be more cracks forming there.   The damage is going to get worse over a period of time.

{¶ 20}   "When should it be replaced?   Whenever the owner gets tired of looking at it.   That is my opinion."

{¶ 21}   When asked by the magistrate how much of a reduction in the typical life span had occurred with the driveway, appellants' expert stated:

{¶ 22}   "It is going to be difficult to talk about it in those terms.   I don't think it can be quantified.   It is more of a subjective, not just appearance, but performance.   It has already failed.   It has already reached its life-span.   It has already started to deteriorate, showing braking and scaling.   It is not meeting its intentions of being a nice-looking finished product.   It has scaling on the surface, It has cracking.   It has already met its life expectancy.   Those things shouldn't be observed for 15 or 20 years.   Is it serviceable?   Sure. But to what degree? You know, any concrete is serviceable for any number of reasons, but it is to what degree you want to accept the conditions of it.   So that question can be answered as far as how many years reduction has occurred.   I would say already it reached its limit.   It has already shown failure.

{¶ 23}   "On the other hand, it can be used like it is if somebody wanted to accept the defects that are there, but the only thing, there is no subbase

underneath there in some spots, so it is going to continue to deteriorate, and eventually it will probably look a lot worse than what it does right now."

{¶ 24} The above evidence allowed the magistrate to conclude that while appellants did not receive exactly what they bargained for, the driveway still met its essential purpose. There was no testimony that the driveway was unusable or would become so in the near future. Pictures admitted at trial showed some surface defects, but the driveway was clearly useable. All experts testified that cracks can never be prevented.

{¶ 25} Hence, appellee substantially performed under the contract and was entitled to be paid for that performance less an allowance for the defects in the performance or damages for failure to strictly comply with the contract. Appellants assert that they should be awarded damages of $23,860—over twice the contract price—which is the amount necessary to completely replace the driveway. However, not only is this award improper due to appellee's substantial performance under the contract, but that award is not supported by the evidence going to the damages element itself.

{¶ 26} Ordinarily, the cost of repairs is the proper measure of damages for construction defects. *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 253, 518 N.E.2d 18. Stated differently, the proper measure of damages is the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into the contract. *Sites v. Moore* (1992), 79 Ohio App.3d 694, 607 N.E.2d 1114, motion to certify overruled in (1992), 65 Ohio St.3d 1465, 602 N.E.2d 1173. The evidence in the case at bar does not support a damages award equaling the cost of total replacement. The evidence discussed above supports a finding that the defects occurring in the driveway could be repaired. The problem is that appellants put on evidence only of replacement cost.

{¶ 27} It was appellants' burden to prove damages. See *Akro–Plastics v. Drake Industries* (1996), 115 Ohio App.3d 221, 226, 685 N.E.2d 246. The magistrate correctly pointed out that there was no evidence on the cost of repairs. The magistrate then determined that the measure of damages should be based on the average thickness of the driveway as completed (4 inches) compared to what the contract called for (4.5 inches). The magistrate arrived at a shortfall of 11.11 percent. Applying this percentage to the contract price of $10,855.10, the magistrate computed damages to be $1,206.

{¶ 28} As discussed above, the defects in the driveway included more than just the lack of the thickness agreed upon under the contract; however, there was little if no evidence of any actual damage arising from this shortfall. Accordingly, we question the appropriateness of computing damages based on the thickness of the driveway. However, we understand that the magistrate had no

evidence regarding damages other than replacement cost. Appellee has not filed a cross-appeal taking issue with the magistrate's award· of damages to appellant. Hence, this court will not interfere with the amount awarded.

{¶ 29} For all of the reasons set forth above, this court finds that the trial court did not err in adopting the magistrate's decision which found that appellee had substantially performed under the contract and that appellant was entitled to $1,206 for damages. Accordingly, appellants' first and second assignments of error are overruled.

{¶ 30} Turning to appellee's cross-appeal, appellee contends that the trial court erred in denying its motion for attorney fees under R.C. 1345.09(F)(1). Appellant originally set forth a claim of violation of the Ohio Consumer Sales Practices Act ("CSPA"), which prohibits unfair or deceptive practices in consumer transactions. Appellants voluntarily dismissed their CSPA claim just prior to trial. Appellee then moved for attorney fees under R.C. 1345.09(F)(1). Appellee contended, in essence, that appellants acted in bad faith in bringing and maintaining the CSPA claim because the driveway was also used for commercial purposes (appellants parked trucks used in their business on the driveway) and, therefore, the CSPA did not apply. The trial court denied appellee's motion, concluding that appellants had not filed or maintained the CSPA claim in bad faith.

{¶ 31} R.C. 1345.09(F)(1) states:

{¶ 32} "(F) The court may award *to the prevailing party* a reasonable attorney's fee * * *, if either of the following apply:

{¶ 33} "(1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith[.]" (Emphasis added.)

{¶ 34} A prevailing party does not exist when a claim is voluntarily dismissed. See *Sturm v. Sturm* (1992), 63 Ohio St.3d 671, 675, 590 N.E.2d 1214; *Miami Valley Hosp. v. Payson* (Dec. 7, 2001), Montgomery App. No. 18736, 2001 WL 1562103; and *Ohio Civ. Rights Comm. v. GMS Mgt. Co., Inc.* (June 28, 2000), Summit App. No. 19814, 2000 WL 840495,[1] citing *Champion Mall Corp. v. Bilbo Freight Lines, Inc.* (1992), 81 Ohio App.3d 611, 615, 611 N.E.2d 969. Appellee was not entitled to attorney fees under R.C. 1345.09(F)(1) because there was no CSPA claim, and thus no prevailing party, once such claim was voluntarily dismissed.

---

1. A discretionary appeal was not allowed in (2000), 90 Ohio St.3d 1449, 737 N.E.2d 53.

{¶ 35}   For this reason, the trial court did not err in denying appellee's motion for attorney fees under R.C. 1345.09(F)(1).   Accordingly, appellee's cross-assignment of error is overruled.

{¶ 36}   In summary, appellants' assignments of error and appellee's cross-assignment of error are overruled.   The judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

PEGGY BRYANT and LAZARUS, JJ., concur.