[Cite as *Davis v. J & J Concrete*, 2019-Ohio-1407.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| WILLIAM ROGER DAVIS, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-T-0074** |
| J&J CONCRETE, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CV 01992.

Judgment: Affirmed.


*David L. Engler*, Engler Law Firm, 181 Elm Road, N.E., Warren, OH 44483 (For Plaintiff-Appellant).

*Michael D. Rossi*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Defendants-Appellees).


MARY JANE TRAPP, J.

{¶1} Appellant, William Roger Davis, appeals the judgment of the Trumbull County Court of Common Pleas adopting the magistrate's $100 award of nominal damages in Mr. Davis' breach of contract claim against appellee, J&J Concrete ("J&J"). For the following reasons, we affirm.

### Substantive and Procedural History

**{¶2}** Mr. Davis and J&J entered into a contract towards the end of 2013, whereby J&J agreed to pour a concrete mono slab foundation (a mono foundation is a combined footer and floor that is one unit and moves with the ground formed with a single pour of concrete) for Mr. Davis' "Quonset hut." A Quonset hut is a prefabricated storage structure made of steel that has a semicircular "bow" shape with all its weight on two sides. The parties agreed on a price of $9,500, which was increased to $10,000 when the foundation was laid.

**{¶3}** Mr. Davis purchased the Quonset hut kit and accompanying blueprints from a friend, and he used those blueprints and their specifications to obtain estimates from various contractors, including J&J. Mr. Davis later obtained a second set of blueprints directly from the manufacturer, American Steel, when he changed the design of the Quonset hut after the footer was poured in July of 2014.

**{¶4}** The original blueprints were not before the trial court, but the second set required the mono foundation to be at least 16 inches in depth. The parties stipulated that the 16-inch depth was a specification, together with a requirement that No. 6 rebar be incorporated into the foundation and that the foundation's strength was to be no less than 2,500 psi ("per square inch" of concrete measures the "crush strength" of concrete).

**{¶5}** Mr. Davis was running electricity to the Quonset hut a few weeks after the structure was assembled when he noticed the mono foundation was not 16 inches all around.

**{¶6}** Mr. Davis filed a complaint against J&J in the Trumbull Court of Common Pleas alleging breach of contract, breach of warranty, fraud, and violation of the Ohio Consumer Sales Practice Act ("CSPA") for J&J's failure to lay down the foundation with

2

a 16-inch depth and omission of No. 6 rebar that was to be embedded in the foundation for beam strength.

{¶7} The case proceeded to a hearing before the magistrate where both parties presented witnesses, and a site view was conducted with parties actually digging five random holes for measurement and inspection by the magistrate. The inspection revealed the concrete depth varied from 12 to 16 inches.

{¶8} Mr. Davis submitted two expert witnesses as to the cost of repair. The first, William Conger, owner of W.D.C. Concrete Inc., was also one of the contractors who initially submitted an estimate to lay down the foundation. Mr. Conger explained that the depth of a footer is important to protect structures from frost, especially in northeast Ohio. When structures are subjected to wet and then cold conditions, footers can buckle, twist, and at their worst, destroy a building. Footers are also meant to be completely smooth on the outside so that "the ground can move without moving the structure." Mr. Conger opined that J&J failed to perform in a workmanlike manner because the foundation bubbled, was not the correct depth, and contained only 3/8 rebar, not the stronger No. 6 rebar called for in the plans.

{¶9} John L. Miller, co-owner of J&J along with his wife, Cindy, disagreed with Mr. Conger's assessment. Mr. Miller testified that any foundation that was not 40 or more inches, the minimum required to be below the frost level of Trumbull County, was considered a "floating foundation" or a "mono foundation." In his opinion, "the top just has to be square. What it looks like below ground level does not matter." Mr. Miller also contested Mr. Davis' and Mr. Conger's testimony, contending that he installed No. 6 rebar. He did not have purchase tickets for the rebar (on which Mr. Conger based his testimony)

3

because Mr. Davis requested a materials list only after the fact, and he "didn't purchase [the No.6 rebar] specifically for that job." Mr. Miller supplied the No. 6 rebar from materials he had in his own inventory.

{¶10} As to the cost of repair, Mr. Conger advocated dissembling the entire building, removing the defective foundation, re-pouring it, and lastly, reassembling the building. In his own words, "You cannot put a footer in after the fact." Digging underneath and putting a new slab in would undermine the strength of the building. This undertaking would cost approximately $50,000.

{¶11} The second expert to testify was the carpenter who assembled the Quonset hut, James R. Wakefield. Mr. Wakefield provided Mr. Davis with an estimate of $49,118 to completely dissemble the structure, remove and then pour a new foundation, and finally, reassemble the building.

{¶12} Both Mr. Davis and Mr. Miller agreed the foundation met the psi requirements of the contract since it had a psi of 4,500.

{¶13} Both parties also agreed the foundation and, correspondingly, the Quonset hut, were undamaged and that the foundation served its purpose without fault since it was built over three years ago.

{¶14} The magistrate issued her findings of fact and conclusions of law. In addition to her findings regarding the parties' agreement on three particular specifications for the foundation and her observations at the site view as to the depth variances, she also found that the lower portions of the concrete had a "rough, 'bubbled,' appearance." The magistrate found Mr. Miller credibly testified that he did incorporate the No. 6 rebar and the foundation's strength was 4,500 psi. Further, the Quonset hut served its intended

4

purpose, and there was no evidence of foundation cracks or other compromise of the building's structural integrity. The magistrate also found Mr. Conger qualified as an expert in concrete, but not engineering, and was "not a competent expert to render an opinion as to the structural effects of an uneven footer of a Quonset hut."

{¶15} In her findings of law, the magistrate determined J&J did not materially breach the parties' contract because it had substantially performed its obligations. While the cost of repairs is ordinarily the proper measure of damages for construction defects, the magistrate found this case does not support a damage award equaling the cost of replacement at the estimate given of $50,000. There was no credible evidence the contract failed its essential purpose and no evidence quantifying any harm from the faulty footers. Therefore, the magistrate concluded Mr. Davis was entitled to nominal damages only and awarded him $100 on the breach of contract claim.

{¶16} After overruling Mr. Davis' objections, the trial court adopted the magistrate's findings of fact and conclusions of law. This appeal followed in which Mr. Davis raises the following assignment of error:

{¶17} "The trial court committed reversible error in deciding that plaintiff-appellant was only entitled to recover nominal damages of One Hundred Dollars ($100.00)."

**Standard of Review**

{¶18} "On appeal, a trial court's adoption of magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." *Marble Builder Direct Internatl., Inc. v. Hauxhurst*, 11th Dist. Lake No. 2011-L-040, 2012-Ohio-1674, ¶16, quoting *Brown v. Gabram*, 11th Dist. Geauga No. 2004-G-2605, 2005-Ohio-6416, ¶11, citing *Lovas v. Mullet*, 11th Dist. Geauga No. 2000-G-2289, 2001 Ohio App.

5

LEXIS 2951, 5-6 (July 29, 2001). The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *Id.*, citing *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Stated differently, an abuse of discretion is the "trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, citing *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black Law's Dictionary* (8 Ed.Rev.2004) 11.

### Breach of Contract and Nominal Damages

{¶19} In his sole assignment of error, Mr. Davis contests the magistrate's award of nominal damages in the amount of $100 for J&J's failure to pour a foundation 16 inches in depth. More specifically, Mr. Davis contends this was a material breach going to the heart of the contract and that the doctrine of substantial performance should not have been applied. Further, Mr. Davis argues the magistrate improperly excluded the expert testimony of his witness, Mr. Conger, a concrete contractor, as to the structural integrity of the structure and in awarding only nominal damages as to the cost of repair.

### Substantial Performance of  Contract

{¶20} "In Ohio, a 'long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract.'" *Warren Concrete and Supply, Inc. v. Strohmeyer Contracting, Inc.*, 11th Dist. Trumbull No. 2010-T-0004, 2010-Ohio-5395, ¶18, quoting *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, (1922), paragraph two of the syllabus. "Substantial performance of a contract is interpreted to mean * * * that slight departures, omissions and inadvertences should be disregarded."

6

*Id.*, quoting *Kichler's, Inc. v. Persinger*, 24 Ohio App.2d 124, 126, (1st Dist.1970), *see, also Thompson, supra.* "For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract." *Hansel v. Creative Concrete & Masonry Constr. Co.*, 148 Ohio App.3d 53, 56, 2002-Ohio-198, ¶12 (10th Dist.). "Therefore, a 'material breach' or an error which goes to the heart of the contract will undermine a promisor's claim despite his or her performance." *Id.*

{¶21} "The question of whether a contractor has substantially performed under a contract is one of fact and degree. Hence, there is no 'rule of thumb' for determining whether obligations in an agreement have been substantially performed. Nevertheless, certain relevant factors are: the purpose of the contract; the desires being gratified by the contract; the excuse for deviating from the contract's specifications; and the cruelty of requiring the promisor to strictly adhere versus the problems inherent in compelling the promisee to accept something less than that for which it bargained." *Warren Concrete* at ¶19, citing *O.W. Grun Roofing & Construction Co. v. Cope,* 529 S.W.2d 258, 261 (Tex.Civ.App.1975).

{¶22} The parties in this case agree that Mr. Davis contracted for a mono foundation with a depth of 16-inches, that No. 6 rebar would be laid in the foundation for beam strength, and that the concrete strength of the foundation would have a psi of at least 2500.

{¶23} There is no dispute that the foundation depth varies and is not uniformly 16-inches in depth. As for the No. 6 rebar, the magistrate found Mr. Miller's testimony that he did incorporate it when laying the foundation credible. Lastly, the evidence reflected that the concrete strength of the foundation is 4,500 psi. Thus, the only defect in J&J's

7

performance is the shallow foundation. Therefore, our analysis turns to whether the magistrate erred in finding this breach of performance immaterial.

{¶24} "For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract." *Hansel* at ¶12 (10th Dist.), citing *F.C. Machine Tool & Design, Inc. v. Custom Design Technologies, Inc.*, 5th Dist. Stark No. 2001CA0019, 2001-Ohio-7047, citing *Wengerd v. Martin*, 9th Dist. Wayne No. 97CA0046, 1998 WL 225107 (May 6, 1998).

{¶25} In *Hansel*, *supra*, the Tenth District Court was confronted with a concrete driveway that was improperly poured. It was riddled with defects—cracking, scaling, and pitting. Despite the court's finding that the contractor failed to perform in a workmanlike manner in finishing the driveway with proper techniques, and that it had additional problems with the misplacement of the wire mesh and an uneven subbase, the court found the evidence supported the magistrate's conclusion that the contractor "had substantially performed under the contract in that the driveway had not failed in its essential purpose." *Id.* at ¶16.

{¶26} Further, although the homeowners in *Hansel* submitted expert testimony that the driveway had suffered significant damage after only one or two years, the same expert also testified that the concrete itself was satisfactory. The crucial linchpin in *Hansel* was that while the homeowners "did not receive exactly what they bargained for, the driveway still met its essential purpose. There was no testimony that the driveway was unusable or would become so in the near future. Pictures admitted at trial showed some surface defects, but the driveway was clearly useable." *Id.* at ¶24. Thus, the court found that the contractor substantially performed under the contract and was entitled to be paid

8

for that performance "less an allowance for the defects in the performance or damages for failure to strictly comply with the contract." *Id.* at ¶25.

{¶27} Similarly, here, we find the evidence supports the magistrate's conclusion that J&J substantially performed under the contract in that the foundation has not failed its essential purpose. Undoubtedly, there is a construction defect because the foundation lacks the contracted for 16-inch depth, but there is no evidence this has rendered the foundation unusable. The essential purpose of the foundation is more than served since Mr. Davis has been unable to point to any damage to the foundation or the structure itself. Mr. Davis admitted there were no defects, cracks, or other damage to the structure three years later. The essential purpose of the Quonset hut as a storage unit is being met.

### Cost of Repair

{¶28} The magistrate also correctly found there was no evidence as to the cost of repairs. The only evidence submitted in this case were two estimates for the complete removal and then reassembly of the foundation and Quonset hut. The estimates, provided by Mr. Conger, a concrete contractor, and Mr. Wakefield, the carpenter who built the Quonset hut upon the foundation, were $50,000 and $49,118, respectively. But there were no estimates as to correcting the foundation itself, and no evidence of any damage quantifying the harm to the structure from the improperly laid foundation. Indeed, there is no evidence that any harm has even occurred.

{¶29} "Ordinarily, the cost of repairs is the proper measure of damages for construction defects." *Hansel* at ¶26, citing *Barton v. Ellis*, 34 Ohio App.3d 251, 253 (10th Dist.1986). "Stated differently, the proper measure of damages is the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered

9

into the contract." *Id.*, citing *Sites v. Moore*, 79 Ohio App.3d 694, 702 (4th Dist.1992), motion to certify overruled in 65 Ohio St.3d 1465 (1992).

{¶30} It was Mr. Davis' burden to prove damages. *Id.* at ¶27, *see, Akro-Plastics v. Drake Industries,* 115 Ohio App.3d 221, 226 (11th Dist.1996). Since there is no evidence of any harm from the defective foundation, there is no corresponding damage. Thus, we cannot say the magistrate erred in concluding that Mr. Davis is entitled to only nominal damages. *See, The Toledo Group, Inc. v. Benton Industries, Inc.*, 87 Ohio App.3d 798, 807 (6th Dist.1993).

### *Expert Testimony*

{¶31} Mr. Davis also contends the magistrate improperly diminished Mr. Conger's testimony based on the fact that he is not a structural engineer. He argues Mr. Conger's testimony is relevant insofar as the contract calls for a 16-inch footer and that "Conger was eminently qualified to testify about the failure of the footers to conform to the contractual requirements and the quality of J&J's workmanship in installing the footers."

{¶32} We do not disagree with Mr. Davis' argument regarding the relevance of Mr. Conger's testimony. We do, however, disagree with his interpretation of the magistrate's ruling regarding Mr. Conger's testimony. Specifically, the magistrate was looking for competent expert opinion testimony that the foundation is compromising the structural integrity of the building that would necessitate a $50,000 award of damages.

{¶33} As this court has observed in the past, while it can be argued that the cause and extent of damage from shallow footers is within the expertise of a concrete contractor whose business it is to pour footers or remediate damage caused by improperly installed footers, "* * * the law provides wide discretion to the trial court in determining the

10

necessary qualifications of an expert. The Supreme Court [of Ohio] has held that: the qualification or competency of a witness to testify as an expert or to give his opinion on a particular subject rests with the trial court, and, on appeal, its rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion." *Midwest Materials, Inc. v. Aetna Freight Lines, Inc.*, 11th Dist. Lake No. 9-021, 1982 WL 5659, at *1 (Sept. 24, 1982), citing *Ohio Turnpike Commission v. Ellis*, 164 Ohio St. 377 (1955).

**{¶34}** As noted earlier, "an abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" (Citations omitted.) *Marble Builder Direct Internatl.* at ¶16.

**{¶35}** A review of Mr. Conger's testimony reveals that he testified as to the foundation's improper shallow depth and that twisting and/or cracks of the foundation *could* occur due to an improperly laid foundation from his experience as a concrete contractor. No evidence was presented of any harm caused by the variances in footer depth. Mr. Conger's testimony only raised a possibility.

**{¶36}** We find no abuse of discretion. The magistrate in the exercise of sound, reasonable, and legal decision-making allowed Mr. Conger's testimony, assessed it and found that Mr. Conger, "while qualified as an expert in concrete, is not an engineer, and is not a competent expert to render an opinion as to the structural effects of an uneven footer of a Quonset hut." Thus, the magistrate concluded "[t]he evidence in this case * * * does not support a damages award equaling the cost of replacement, here estimated at $50,000. There is no credible evidence that the contract failed its essential purpose. The concrete pad for the Quonset hut has served its intended purpose, and there is no

11

evidence of foundation cracks or other compromise of the building's structural integrity. The only testimony of the effect of the uneven footer on the structural integrity of the Quonset hut (and therefore the need to disassemble the Quonset hut, re-pour the footer, and rebuild the Quonset hut) came from Mr. Conger, who is not an engineer, and to whom the magistrate does not find to be a credible expert to testify thereto. The original blueprints were not submitted into evidence. There was no testimony as to the cost to repair the foundation. Nor was there any testimony regarding the diminution in value of the real property."

{¶37} In summary, we cannot conclude the trial court abused its discretion in adopting the magistrate's decision because Mr. Davis failed to submit any evidence that any harm, and correspondingly, damage has occurred from J&J's breach of the contract in failing to pour a 16-inch foundation. J&J's breach of the contract was not material, no harm to the foundation's essential purpose was shown, and no evidence of damages was submitted. Under these circumstances, we cannot say the magistrate's award of nominal damages only was in error or unsupported by the evidence.

{¶38} Mr. Davis' assignment of error is without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.