[Cite as *Perkins v. Petrilli*, 2022-Ohio-2029.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

DON PERKINS DBA A1 CONCRETE
LEVELING AND FOUNDATION REPAIR,

Plaintiff-Appellant,

v.

JOSEPH PETRILLI,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0089**

---

Civil Appeal from the
Mahoning County Court Number Five of Mahoning County, Ohio
Case No. 2019 CV F 0032 CNF

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Scott R. Cochran*, 19 E. Front Street, Youngstown, Ohio 44503 for Plaintiff-Appellant
and

*Atty. Matthew C. Giannini*, 1040 S. Commons Place, Suite 200, Youngstown, Ohio 44514, for Defendant-Appellee, No Brief Filed.

Dated: June 15, 2022

---

**Robb, J.**

{¶1}    Plaintiff-Appellant Don Perkins, dba A1 Concrete Leveling and Foundation Repair, appeals the decision of the Mahoning County Court Number Five, wherein the court rejected his claims seeking the balance due from Defendant-Appellee Joseph Petrilli on a construction project.  Appellant contends the court's decision was against the manifest weight of the evidence.  For the following reasons, the trial court's decision is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2}    On May 12, 2015, the parties executed a contract calling for Appellant to perform the following work on a wall around Appellee's patio:

> remove all of the existing brick on the walls and steps.  Cement block will
> be returned to original position (replaced if cracked).  The block will be filled
> with rebar every 16" and made solid with Portland cement.  The area behind
> the wall will be excavated to remove existing soil and replaced with clean
> gravel. Drains will be opened or replace[d] to allow water to flow from behind
> the wall.  All brick replaced.  Return to rough grade.

The contract also said, "Block will be chosen by customer from sample board as close to house brick."  The testimony indicated this should have said brick instead of block.  (Tr. 49).

{¶3}    The contract price was $15,000.  (Def.Ex. 1); (Tr. 24 Stipulation).  Appellee paid $7,500 on June 3, 2015 but thereafter refused to pay the remaining $7,500.

{¶4}    Appellant filed a complaint against Appellee with claims for breach of contract and unjust enrichment, seeking the unpaid balance.  Appellee's answer raised various defenses, such as failure of consideration and unclean hands.  Appellee counterclaimed for breach of contract, alleging Appellant failed to perform in a workmanlike manner and used defective materials, which breached the agreement and caused additional property damage.  Appellee also set forth a breach of warranty claim.

{¶5}    The case was tried to the court.  Appellant testified he owned the company for 22 years, stating they do some walls but 75% of their work is concrete leveling.  He

generally did not participate much in the construction work. (Tr. 6). He said Appellee's old wall was deteriorating, crumbling, and spalling, which may have been from age and water leaching through the brick. (Tr. 27-28). For the replacement wall, he acknowledged providing a five-year warranty for any workmanship issues. (Tr. 44).

{¶6} The new wall spanned approximately 50 feet with a break between the two sections for brick stairs. (Tr. 32). From the photographs, the brick wall appeared to be waist high. The section that was a retaining wall was also bench seating (with the top part of the wall constituting the back of the seating). When asked if the bench was level, Appellant acknowledged that some of the bench had a "dip" causing water to pool when it rains. (Tr. 37).

{¶7} On the issue of drainage from behind the retaining wall, Appellant admitted he was to install weep holes through the wall so the area behind the wall could drain (rather than deteriorate the wall or freeze behind it). (Tr. 9, 16). He acknowledged he used river rock as fill after excavating the soil, rather than the gravel called for by the contract. (Tr. 39). He did not install drainage pipe (or tile) behind the weep holes, claiming the non-conforming rock would allow for drainage while noting the contract did not specify pipe. (Tr. 40, 46-47).

{¶8} Appellant's attorney asked whether anything occurred during the time the mortar may have been still curing, and Appellant said a brick came off the wall when Appellee put his hand on it as he was using the stairs. (Tr. 14). Appellant concluded the wall had no structural problems and was very functional. (Tr. 15, 37, 51). He acknowledged it was not a perfect wall and there were cosmetic issues (such as an oddly large seam of mortar compared to the other seams) but opined the wall looked good with no movement, deterioration, or evidence of leaching. (Tr. 15, 37, 46-48).

{¶9} On the issue of color, the brick did not match the house or the small portion of the old wall which was left intact adjacent to the house. Appellant acknowledged Appellee may have instructed him to make the final choice but pointed out Appellee was contractually responsible for choosing the color. (Tr. 38, 49). However, some of the new bricks seemed as if they did not match each other.

{¶10} Appellee's daughter testified she lived with her father and was living there during construction. At the time, Appellee was recovering from back surgery and could

not oversee the work on his patio.  (Tr. 63, 81).  The daughter spoke about some photographs she took, showing:  the retaining portion of the wall; water pooling on the bench; the river rock and the absence of drainage pipes discovered during an investigatory excavation; and a worker drinking beer on the wall.  When she complained to Appellant about the beer, he told her to go tell the workers to stop drinking.  (Tr. 62).

{¶11}  The daughter used a level to determine the wall was not level.  (Tr. 71).  The mortar from where the brick fell off eventually crumbled away a year later.  (Tr. 70-71).  She said the extra-large seam of mortar ran the entire length of the wall and was not merely in one area as Appellant suggested.  (Tr. 68).  Within three to four weeks of construction, she noticed mortar "popping off" which thereafter continued to occur on a regular basis; she brought a baggie of the scraps representing what she regularly cleaned from the patio.  (Tr. 69).

{¶12}  She also testified there were "giant cracks" in both sections of the wall, but the court would not permit her to show the photographs due to the failure to provide them in discovery (with the court noting she could testify about the cracks).  (Tr. 69, 71, 75-77).  She was also not permitted to testify about the three estimates she obtained to repair the wall, but the court agreed to consider her testimony on wanting the wall replaced.  (Tr. 65-67).  Finally, the daughter showed a photograph of a scratch running down the driveway, which was caused when Appellant's Bobcat trailer fell apart and scraped the asphalt as they drove away.  (Tr. 74).

{¶13}  Appellee testified his old wall was built with the house in 1979 and was cracked, peeling, and spalling from water pushing through the brick.  (Tr. 79-80).  Drainage was one of the main items he wanted from the contract in order to avoid the same situation.  (Tr. 89).  He assumed that since the soil was being removed, the additional contract requirement that "Drains will be opened or replace[d] to allow water to flow from behind the wall" would include the installation of perforated pipes leading to the installed weep holes (opining it was common sense and noting he has never witnessed the weep holes functioning).  (Tr. 90).

{¶14}  Appellee also complained about the following:  the use of river rock instead of gravel; the wall being "half a bubble" off level all around; the pooling of water on the bench; the mortar spontaneously flaking off; grit from the mortar falling off when rubbed

(which he attributed to too much sand in the mortar); the variations in mortar spacing (between .25 and 2 inches); the varying colors of bricks; and the use of red when he was shown a choice of browner colors (with no sample board being provided).  (Tr. 83-88).

{¶15}  Appellee noted he engaged in masonry side jobs in his past, as his father-in-law owned a masonry company.  (Tr. 78-79).  He said a worker had to restart the steps four times as though he had no experience.  (Tr. 88).  He also witnessed a worker applying mud with his hand, using the trowel as if it were a level, and starting the next course without using an actual level.  (Tr. 83).  After three to four weeks of working on the wall, Appellee noticed the workers left four cases of empty beer cans behind.  (Tr. 82).

{¶16}  On July 13, 2021, the court released a judgment, which essentially maintained the monetary status quo, disallowing either party from collecting additional money.  The court quoted from the contract and set forth the parties' arguments.  The court said the contract included a common law duty of good faith and fair dealing and an implied duty to construct in a workmanlike manner.  The court mentioned aesthetic considerations and set forth Appellee's arguments on the mortar's continual crumbling and on the employees "drinking alcohol on the job, which may have contributed to the alleged poor construction."  The court emphasized Appellant's failure to construct a level wall.  The court concluded Appellant did not perform in a workmanlike manner, rejected the breach of contract claim for the unpaid balance, and indicated unclean hands and equity did not support Appellant's recovery of additional sums (which implicitly rejected the unjust enrichment claim).

{¶17}  The court also rejected various counterclaim arguments set forth by Appellee on damages, found Appellee could not complain about the brick color because he chose it, and adopted Appellant's argument on the absence of drainage pipes by finding he was only contractually "responsible for replacing existing drainage, which both parties acknowledge was non-existent."  Appellee did not file a cross-appeal or an appellate brief (instead filing a notice stating no brief would be filed).

ASSIGNMENT OF ERROR ONE

{¶18}  Appellant's first assignment of error contends:

"The Trial Court's decision that Appellant failed to perform the contract in a workmanlike manner was against the manifest weight of the evidence."

{¶19} When a contractor enters an agreement to provide future services, the contractual agreement contains an implied duty to construct the improvement in a workmanlike manner. *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St.3d 226, 229, 2001-Ohio-1334, 754 N.E.2d 785. "In a construction contract, a breach of the implied duty to perform in a workmanlike manner constitutes a breach of the contract." *Yashphalt Seal Coating LLC v. Giura*, 7th Dist. Mahoning No. 18 MA 0107, 2019-Ohio-4231, ¶ 18.

{¶20} "A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site." *Id.* at ¶ 16, quoting *Jones v. Centex Homes*, 132 Ohio St.3d 1, 2012-Ohio-1001, 967 N.E.2d 1199, ¶ 6. "The implied warranty to perform in a workmanlike manner requires that those who repair or modify existing tangible goods or property perform the service using proper materials and workmanlike skill and judgment." *Id.* at ¶ 17.

{¶21} The court found Appellant failed to perform as promised or in a workmanlike manner. In contesting this decision, Appellant points out he has 22 years of experience of owning a company that levels concrete slabs and constructs walls and he testified the performance was rendered in a workmanlike manner. Appellant acknowledges Appellee was not required to obtain an expert for trial but contends the defect surrounding the unlevel bench does not show a failure to perform in a workmanlike manner and concludes the court's decision was contrary to the manifest weight of the evidence.

{¶22} Weight of the evidence involves the persuasive effect of the evidence when considering whether a burden was met, which entails an evaluation of "the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, 19 (it is not a question of mathematics but depends on the effect of the evidence in inducing belief). The burden in a civil trial is preponderance of the evidence, which is defined "as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 54. Under a preponderance of the evidence standard, the evidence need *not* give rise to a firm belief

as to the facts sought to be established. *Id.* (which is the higher clear and convincing standard).

**{¶23}** When considering a manifest weight of the evidence challenge, the appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Eastley*, 132 Ohio St.3d 328 at ¶ 20, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) (the power of the appellate court to reverse a judgment as being against the manifest weight of the evidence is to be exercised only in the exceptional case in which the evidence weighs heavily against the judgment).

**{¶24}** The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley*, 132 Ohio St.3d 328 at ¶ 21 (making every reasonable presumption in favor of the judgment and the finding of facts). "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*, quoting *Seasons Coal*, 10 Ohio St.3d at 80.

**{¶25}** As to the unlevel bench allegation, Appellant acknowledges a photograph showed the bench contained a dip and was not level, which allowed water to pool on the sitting area. As for the trial court's finding that the entire wall was not level, Appellant argues the only evidence on levelness related to the bench part of the wall. However, Appellee testified he used a level and found the wall was not level "all the way around." (Tr. 85). His daughter also testified she used a level to determine the wall was not level. (Tr. 71).

**{¶26}** Furthermore, regardless of the issue concerning the lack of drainage pipes, there is the undisputed fact that Appellant buried river rock behind the wall instead of the bargained for gravel. Appellee testified he never witnessed the functioning of the weep holes installed by Appellant. It is also concerning that mortar regularly would fall off the

wall on its own and come loose when rubbed. There was testimony about the workers drinking alcohol and some unorthodox techniques and results. Appellant agreed there were large variations in mortar spacing. Additionally, Appellee's daughter also testified to cracks forming in both sections of the wall.

**{¶27}** Upon weighing the evidence and all reasonable inferences, it does not appear the fact-finder clearly lost its way in resolving credibility issues or conflicts in the evidence in order to conclude the work was not performed in a workmanlike manner. There is not "such a manifest miscarriage of justice that the judgment must be reversed," as this is not the exceptional case where the evidence weighs heavily against the judgment. *Eastley*, 132 Ohio St.3d 328 at ¶ 20. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**{¶28}** Appellant's second assignment of error alleges:

"The Trial Court's decision that Appellant had breached the contract and, by inference, that it had not substantially completed the contract was against the manifest weight of the evidence."

**{¶29}** Appellant states only substantial performance is required in order for an unpaid party to show a breach of contract, and he assumes the trial court implicitly found he failed to substantially perform the contract. Appellant urges he substantially performed under the contract, citing cases where the court found the defective work did not constitute a lack of substantial performance.

**{¶30}** "It is an old rule of law, as old as the law of contracts, that where one party has substantially performed his part of the contract, he may call upon the other party to perform his part of the contract; or, such party failing so to perform, he may sue for breach of contract." *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, 434, 135 N.E. 537 (1922). "Where there is substantial performance upon one side, there should be substantial performance upon the other side; and there is substantial performance upon one side when such performance does not result in any wrongful substantial injury to the other side." *Id.*

**{¶31}** "For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract." *Hansel v. Creative Concrete & Masonry Constr. Co.*, 148 Ohio App.3d 53, 56, 2002-Ohio-198, 772 N.E.2d 138, ¶ 12

(10th Dist.) (also framing the question as whether the contractor's performance could be considered a material breach). "[A] breach of one of several terms in a contract does not discharge the obligations of the parties to the contract, unless performance of that term is essential to the purpose of the agreement, and default by a party who has substantially performed does not relieve the other party from performance." *Id.* at ¶ 11, citing *Kersh v. Montgomery Developmental Ctr.*, 35 Ohio App.3d 61, 62, 519 N.E.2d 665 (1987).

**{¶32}** In the *Hansel* case cited by Appellant, a driveway had defects including the following: cracking, scaling, and pitting which resulted from the contractor's failure to perform in a workmanlike manner; misplacement of the wire mesh with an uneven subbase; and a depth averaging less than the contracted thickness. *Id.* at ¶ 16. The Tenth District affirmed the decision finding the contractor substantially performed under the contract because "while appellants did not receive exactly what they bargained for, the driveway still met its essential purpose." *Id.* at ¶ 16, 24 (finding no evidence the driveway was unusable or would soon become so). In discussing the homeowner's recovery, the court also affirmed the reduction of the contract price by an amount found reasonable by the trial court (rather than granting the homeowner the full replacement cost). *Id.* at ¶ 25-29.

**{¶33}** In an Eleventh District case relied on by Appellant, the contractor constructed a foundation slab for a storage hut that was thinner at some points than contractually required. Applying the principles in *Hansel*, the court affirmed the finding of substantial performance by the contractor as there was no credible evidence the contract failed its essential purpose. *Davis v. J & J Concrete*, 11th Dist. Trumbull No. 2018-T-0074, 2019-Ohio-1407, ¶ 15 (and upholding the refusal to grant the homeowner the full cost of replacement). The *Davis* court listed some factors relevant to considering whether the existence of a defect still resulted in substantial performance: the purpose of the contract; the wishes filled by the contract; the excuse for the deviation from contractual specifications; and the balance between requiring strict adherence versus requiring the other party to accept less than the bargained-for promise. *Id.* at ¶ 21.

**{¶34}** Where parts of a parking lot were not as thick as required by the contract, "the fact that appellant testified at trial that he is using the parking lot for its intended purpose supports the trial court's conclusion that appellee substantially complied with the

contract." *Yashphalt Seal Coating*, 7th Dist. No. 18 MA 0107 at ¶ 39 (among other considerations). We point out the decisions in *Hansel*, *Davis*, and *Yashphalt* all involved affirming the trial court's decision on substantial performance, but Appellant is asking this court to reverse on weight of the evidence grounds.

**{¶35}** Appellant looks at the balance of equities in accepting less than the bargained for amount by complaining he lost the expected profit and some of his costs while Appellee received what Appellant claims was a fully functional and structurally sound wall with a bench at half price. He essentially estimated he paid $4,500 in materials and $6,500 in labor while expecting to make a profit of $4,000 on the $15,000 contract price (of which he was paid $7,500).[1] In urging he substantially completed the contract, Appellant says the wall is functional and serves its essential purpose under the contract; the issues raised were cosmetic; and the defect with the bench was minor in relation to the entire wall project.

**{¶36}** Nevertheless, the trial court did not say Appellant failed to substantially complete the contract. Appellant's assignment of error acknowledges he is inferring the court applied this principle to rule against him. However, the trial court addressed workmanlike conduct, which Appellant addressed in his prior assignment of error. Although the trial court's judgment may be somewhat unclear in its structure and its wording (such as on claims being "dismissed"), various holdings are supported by the evidence and the result is not contrary to the manifest weight of the evidence. *See generally Grace v. Pecorelli*, 7th Dist. Columbiana No. 19 CO 0028, 2020-Ohio-4820, ¶ 59 (allegedly wrong reasons are not necessarily prejudicial if the result is supported).

**{¶37}** In fact, Appellant acknowledges in the conclusion of his brief that if we find he rendered substantial performance, then we should remand for the trial court to deduct from his recovery a reasonable amount of damages for the defective bench. This is based on the holding: "substantial compliance will support a recovery of the contract price less allowance for defects in performance or damages for failure to strictly comply with the contract." *Hansel*, 148 Ohio App.3d 53 at ¶ 13 (affirming the trial court's arrival at an amount less than the requested full reconstruction cost).

---

[1] Appellant's brief mistakenly uses the pre-stipulation figure of $15,500 in making calculations.

**{¶38}** This is what the trial court's judgment accomplished. Appellee wished to recover the full cost to reconstruct the wall (and additional sums). There is some evidence of the cost of wall reconstruction in that we know what Appellant himself charged Appellee to reconstruct the old wall ($15,000). The trial court essentially rejected Appellee's damage request to the extent it sought more than to be relieved from paying the remaining $7,500 balance, and Appellee did not appeal. Appellant basically acknowledges Appellee showed some reduction was warranted.

**{¶39}** Appellant's contention that the unlevel bench was the only compensable defect need not be accepted by the trier of facts, who occupied the best position to weigh the evidence, make inferences, and judge credibility. The trial court made a factual finding that the entire wall was not level (which was not limited to merely the bench that Appellant acknowledges was not level). As discussed in the prior assignment of error, this was supported by the testimony. Moreover, the evidence established other defects, including mortar that regularly "pops off" and that peels off when rubbed. We refer back to our above discussion of unworkmanlike performance on various aspects of the project. Furthermore, cosmetic defects are compensable under Appellant's recovery theory (reduction for defective bench).

**{¶40}** In sum, we reject Appellant's contention that a finding of substantial performance on appeal should result in a remand for a reduction of the balance owed to him minus the defects. The court's judgment accomplished this and did not find a lack of substantial performance as alleged in this assignment of error.

**{¶41}** For the foregoing reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

D'Apolito, J., concurs.

———————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court Number Five of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**