[Cite as *Francis v. Signature of Solon Home Owners Assn. Bd. of Trustees*, 2024-Ohio-6017.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

JEHANNA FRANCIS,                                                 :

      Plaintiff-Appellant/                                  :
      Cross-Appellee,

                                                                   :                          No. 113426

      v.                                                            :

BOARD OF TRUSTEES OF
SIGNATURE SOLON HOME OWNERS                  :
ASSOCIATION, ET AL.,

                                                                   :

      Defendants-Appellees/
      Cross-Appellants.                                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 26, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-961437

---

***Appearances:***

Frantz Ward LLP, Mark Rodio, and Kelly C. Bokoch, *for appellant/cross-appellee*.

McCarthy Lebit Crystal & Liffman, Co., L.P.A., John E. Moran, and Frank T. George, *for appellees/cross-appellants*.

LISA B. FORBES, P.J.:

{¶ 1} Plaintiff-appellant/cross-appellee Jehanna Francis ("Francis") appeals from the trial court's order adopting the magistrate's decision granting

defendants-appellees/cross-appellants Signature of Solon Master Association, Inc., Jeff Mattlin, Mark Dively, Brooks Gerbitz, and Charles Schulman's ("Signature Defendants") motion for summary judgment. Signature Defendants cross-appealed the trial court's decision granting Francis summary judgment as to their counterclaim for breach of contract. Both parties appeal the denial of their various motions to strike affidavits.

{¶ 2} After reviewing the evidence and pertinent law, we affirm the trial court's judgments.

## I.    Undisputed Facts

{¶ 3} This dispute revolves around Francis's desire to install a fence in the backyard of her property located at 7501 Sotogrande Court, Solon, Ohio (the "Property"), which is within the Signature of Solon community. The Signature of Solon community is a 354-lot residential community located in Solon, Ohio. The lots are divided into three sections: the eastern portion is known as Signature 1, which consists of 154 lots and is surrounded by a golf course. The golf course is owned by a separate entity known as CF Signature of Solon Arcis, LLC ("Arcis"). The western portion is known as Signature 2, which is slightly larger with 200 lots and is not adjacent to the golf course. In the northern part of Signature 2 is a section of townhomes, known as "Avalon at Signature of Solon" or, simply, "Avalon."

{¶ 4} Signature of Solon Master Association, Inc., a not-for-profit corporation, is the homeowner's association ("HOA"), run by a board of trustees ("the Board") consisting of seven elected members who are responsible for the

affairs and administration of the HOA. Carlyle Management Company ("Carlyle") acted as the third-party property-management agent for the Board. Carlyle's president was Charles Schulman ("Schulman").

{¶ 5} Francis purchased her Property in 2004. She has been a member in good standing of the HOA since she purchased the Property. The Property is in Signature 1. Francis's backyard is adjacent to the golf course, with a portion of the eighth hole visible from her backyard. Francis has neighbors on either side of her Property.

{¶ 6} The Property and Francis's ownership of the Property are subject to the terms and conditions of the following governing documents: the Amended Master Declaration of Covenants, Conditions, Easements, and Restrictions ("the Declaration"); the Amended Code of Regulations ("the Code"); and, the Signature of Solon Master Association General Rules and Policies and Design Review Committee Policies ("DRC Guidelines"). We will refer to the Declaration, the Code, and DRC Guidelines collectively as "the Rules." The Declaration and the Code are both instruments recorded in the Cuyahoga County Fiscal Office. Francis learned of the Rules when she built her home some 20 years before this dispute began.

{¶ 7} The Design Review Committee ("DRC") is "the board created . . . and granted original jurisdiction to review and approve or disapprove all exterior and structural improvements, additions and changes" within the Signature of Solon community. Declaration, Sec. 2.2(j). The DRC oversees compliance with the DRC Guidelines, issuing violations to homeowners who are noncompliant with them and

making sure violations are remedied.  The DRC Guidelines, while not recorded, are specifically incorporated into the Declaration that as noted, is recorded. Declaration, Sec. 8.2(c).

{¶ 8}    Relevant to Francis's proposed fence are three provisions in the Rules.  Section 3.7(e) of the Declaration states:

> To promote a suitable and attractive open space atmosphere, *no fence*, wall, shrubbery, building, or other structure *will be permitted* within [twenty (20) feet of the Golf Course on] Living Unit Lots . . . which are adjacent to the Golf Course, without the prior written approval of the [DRC] and the Golf Course Property Owner.

(Emphasis added.)

{¶ 9}    The DRC Guidelines state that "[f]ences . . . shall not be erected within (20) twenty feet of the Golf Course Property . . . unless approved by the [DRC]."  Guidelines, p. 1.

{¶ 10}   The DRC Guidelines state in the General Community Standards section 2 that: "no wall, fence, coping or other device installed for the purposes of separating lots (other than natural shrubbery) shall be maintained on any lot unless approved in writing in advance by the DRC."  Guidelines, p. 15.

{¶ 11}   Additionally, the Rules direct DRC operations.  For example, an applicant wanting to make changes to their property "must submit a letter of application and preliminary schematic plans (three sets)."  DRC Guidelines, p. 9. An affirmative vote of a majority of the members of the DRC is required for the DRC to "issue any permit, authorization or approval."  Declaration, Sec. 8.1.  The DRC review process included that the DRC was to "review the design documents within

thirty-five (35) days of their receipt and return one set of plans to the applicant with appropriate comments." DRC Guidelines, p. 9. The DRC was called on to "meet as necessary to review Applications for DRC approval within thirty-five days after receipt." *Id.*

{¶ 12} On June 21, 2021, Francis sent an email to Schulman with a survey and drawing for a permanent fence with setbacks of 12 to 18 inches from her rear- and side-property lines. Schulman forwarded Francis's request to the DRC for review.

{¶ 13} On July 23, 2021, DRC member and Board President Jeff Mattlin ("Mattlin") orally informed Francis that her proposed fence was not permitted based on the Association's governing documents. Francis disputed the restrictions, and communications between the DRC and Francis regarding the fence continued. On July 29, 2021, the DRC informed Francis via Mattlin that it would approve a fence in her backyard subject to 20-foot rear and 10-foot side setbacks from the property line. The DRC reasoned that the 10-foot side-boundary setback was necessary to avoid the fence violating the DRC Guidelines, which prohibited a lot-separation fence.

{¶ 14} In early October 2021 the DRC met and agreed to approve Francis's fence with 10-foot and 20-foot setbacks on the side and rear of her property, respectively. On October 11, 2021, the DRC communicated its conditional approval in writing to Francis. Francis appealed the conditional approval through the process afforded in the Rules.

## II.    Procedural History

{¶ 15}    Francis filed this lawsuit in the Bedford Municipal Court on November 30, 2021, against Signature Defendants.  The case was transferred to the Cuyahoga County Common Pleas Court on March 31, 2022.

{¶ 16}    Francis filed an amended complaint on September 16, 2022, against Signature Defendants, alleging claims for breach of contract, declaratory judgment, and breach of fiduciary duties.  Signature Defendants filed an answer and counterclaim for breach of contract against Francis on October 7, 2022.

{¶ 17}    On February 3, 2023, Francis filed a motion for partial summary judgment.  On June 16, 2023, Francis filed another motion for summary judgment on her claims and Signature Defendants' counterclaim.  That same day, Signature Defendants filed a motion for summary judgment as to Francis's affirmative claims.

{¶ 18}    Francis sought to strike portions of affidavits submitted by Don McDougall and Schulman in support of Signature Defendants' summary-judgment briefing.  Signature Defendants moved to strike affidavits supplied by Francis's expert in support of her summary-judgment briefing.

{¶ 19}    On October 10, 2023, the magistrate issued her decision, which included detailed findings of fact and conclusions of law, awarding Signature Defendants summary judgment on each of Francis's claims and granting Francis's motion for summary judgment as to Signature Defendants' counterclaim for breach of contract against her.  The magistrate denied all pending motions to strike.

**{¶ 20}** Francis and Signature Defendants objected to the magistrate's decision. On December 4, 2023, the trial court adopted the magistrate's decision in its entirety and overruled all the parties' objections to the decision.

**{¶ 21}** Francis appealed from the trial court's judgment entry adopting the magistrate's decision, raising six assignments of error, and Signature Defendants cross-appealed, raising two cross-assignments of error, as follows:

> **First Assignment of Error:** The trial court erred in granting summary judgment in favor of Defendants on Ms. Francis' breach of contract claim.

> **Second Assignment of Error:** The trial court erred by finding non-existent waivers, non-existent admissions, and pleading defects to improperly grant summary judgment in favor of Defendants.

> **Third Assignment of Error:** The trial court erred in granting summary judgment in favor of Defendants on Ms. Francis' declaratory judgment claim.

> **Fourth Assignment of Error:** The trial court erred by concluding that the Individual Defendants do not owe a fiduciary duty to Ms. Francis.

> **Fifth Assignment of Error:** The trial court abused its discretion when denying Ms. Francis' Motion to Strike the Affidavits of Charles Schulman and Don McDougall.

> **Sixth Assignment of Error:** The trial court erred by ignoring Ohio's Planned Community Law.

> **First Cross-Assignment of Error:** Francis's breach of the mandatory-mediation clause entitled Signature Defendants to damages.

> **Second Cross-Assignment of Error:** Francis's expert's reports should have been stricken.

## III. Law and Analysis

### A. Signature Defendants' Motion for Summary Judgment as to Francis's Claim for Breach of Contract

{¶ 22} In her first assignment of error, Francis argues that the trial court improperly granted Signature Defendants' motion for summary judgment as to her breach-of-contract claim. She argues there are genuine issues of material fact regarding her fence proposal and its rear setback location such that summary judgment should not have been granted to Signature Defendants. She also argues Signature Defendants breached the Rules by failing to follow the procedures in the Rules and that Signature Defendants waived any fencing restrictions.

{¶ 23} As detailed below, we find Francis's fencing proposal did not comply with the Rules, that Signature Defendants did not materially breach the Rules, and that Signature Defendants did not waive any fencing restrictions.

{¶ 24} We review de novo a trial court's decision granting summary judgment, applying the same standard as the trial court under Civ.R. 56(C). *Wells Fargo Bank, N.A. v. Lundeen*, 2020-Ohio-28, ¶ 10 (8th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Lundeen* at ¶ 10, citing *Ruf v. Belfance*, 2013-Ohio-160, ¶ 8 (9th Dist.).

{¶ 25} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 14 (8th Dist.); *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).

The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Deutsche Bank Natl. Trust Co. v. Talliere*, 2023-Ohio-75 (8th Dist.). The only evidence to be considered in deciding summary judgment is that which is found in the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C).

{¶ 26} After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact for trial. Civ.R. 56(E); *Talliere.*

{¶ 27} In an action for breach of contract, the plaintiff has the burden of proving the following: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *DPLJR, Ltd. v. Hanna*, 2008-Ohio-5872, ¶ 16 (8th Dist.), citing *Jarupan v. Hanna*, 2007-Ohio-5081 (10th Dist.). Francis and Signature Defendants agree that the Rules form the contract each seeks to enforce. *See High Point Assn. v. Salvekar*, 1994 Ohio App. LEXIS 2986, *8 (8th Dist. July 7, 1994) ("Ohio law recognizes that restrictions such as the prohibition against constructing 'fences' . . . are enforceable as a matter of law when the restrictions are reasonable."); *see also Elam v. Woodhawk Club Condominium*, 2019-Ohio-457, ¶ 13 (8th Dist.) ("Condominium

declarations and bylaws are contracts between the association and the purchaser and are subject to the traditional rules of contract interpretation."), citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36 (1987).

### 1. Application of the Rules to Francis's Proposed Fence

{¶ 28} Francis argues that her proposed fence complies with the Rules. According to Francis, the "Golf Course" boundary lines are set by the out-of-bounds stakes and do not include all property owned by the Golf Course. She argues so long as her fence is 20 feet from the out-of-bounds stakes, it complies with the Rules.

{¶ 29} As noted, the Declaration disallows any fence within 20 feet of the "Golf Course" without prior approval of the DRC and the Golf Course Property Owner, while the DRC Guidelines disallow any fence within 20 feet of the "Golf Course Property" unless the DRC has approved it. Declaration sec. 3.7(e); DRC Guidelines, p. 1.

{¶ 30} The Rules define "Golf Course" to mean "[t]he 18-hole golf course and the golf cart paths situated on the Golf Course Property." Declaration sec. 2.2(n). "Golf Course Property" is defined as the "land and facilities adjacent to or in the vicinity of the [Signature of Solon,] which [is] privately owned by the Golf Course Property Owner [Arcis] . . . upon which land and facilities there is, or shall be situated, *inter alia* (i) an 18-hole golf course; (ii) golf driving range, practice putting green and golf cart paths; . . . ." Declaration sec. 2.21(p).

{¶ 31} Francis's proposed fence with a 12-18 inch setback from her rear property line is within 20 feet of the Golf Course Property. Without approval, Francis's fence does not comply with the DRC Guidelines.

{¶ 32} However, Francis urges that her proposed fence does not require approval under the Declaration because her proposed fence is not within 20 feet of the "Golf Course." Francis claims the boundaries of the Golf Course are the field of play as determined by the out-of-bounds stakes based on the U.S. Golf Association Rules. Nothing in the Declaration supports relying on the technical definition proposed by Francis.

{¶ 33} Applying the definition of Golf Course found in the Declaration, we conclude that Francis's proposed fence would be within 20 feet of the Golf Course. It is undisputed that the Golf Course Owner considers the area immediately abutting Francis's property to be part of the Golf Course as it is used by golfers.

{¶ 34} Further, under any circumstances, a fence that separates lots requires DRC approval. Guidelines, p. 15. Because the fence proposed by Francis would separate her lot from her neighbors' lots to either side, DRC approval is required.

{¶ 35} We find there is no genuine issue of material fact here that, absent approval, Francis's proposed fence would violate the Rules.

### 2. Signature Defendants Did Not Materially Breach the Contract

{¶ 36} Francis argues that Signature Defendants breached the Rules by failing to meet deadlines; failing to provide required explanations; holding meetings

without notice; and making important decisions without voting (i.e. filing the counterclaim) and that by breaching the Rules, they are not entitled to summary judgment on her breach-of-contract claim. We disagree.

{¶ 37} Nominal, trifling, or technical departures from the terms of a contract are not sufficient to establish a breach. *Bumbera v. Hollensen*, 2000 Ohio App. LEXIS 1000 *5 (6th Dist. Mar. 7, 2000), citing *Cleveland Neighborhood Health Serv., Inc. v. St. Clair Builders, Inc.,* 64 Ohio App.3d 639, 644 (8th Dist. 1989). "A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Westlake v. VWS, Inc.*, 2014-Ohio-1833, ¶ 29 (8th Dist.), quoting *Marion Family YMCA v. Hensel*, 2008-Ohio-4413, ¶ 7 (3d Dist.).

{¶ 38} "Substantial performance of a contract is interpreted to mean that mere nominal, trifling, or technical departures are not sufficient to break a contract, and that slight departures, omissions and inadvertencies should be disregarded." (Cleaned up.) *Treasurer of Cuyahoga Cty. v. Henen*, 2024-Ohio-2263, ¶ 26 (8th Dist.). "A party substantially performs when such performance does not result in any wrongful substantial injury to the other side." *Id.*, citing *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427, 434 (1922).

{¶ 39} For example, in *Hansel v. Creative Concrete & Masonry Constr. Co.*, 148 Ohio App.3d 53, 59 (10th Dist. 2002), the Tenth Appellate District determined a contractor substantially performed under a contract to install a concrete driveway

where the driveway was clearly usable even though it showed some general defects, e.g., surface cracks, scaling, as well as inconsistent thickness throughout. The court concluded that while plaintiffs did not receive exactly what they bargained for, the driveway met its essential purpose. *Id.* The defects were nominal and the contractor substantially performed. *Id.*

{¶ 40} Assuming, without deciding, the timing and procedural rules cited by Francis were not followed to the letter by Signature Defendants, under the circumstances presented here, and similar to *Hansel*, the breaches alleged by Francis are nominal, trifling, and technical departures and are not so significant that the essential purpose of the Rules was frustrated.

{¶ 41} It is undisputed here that within 35 days of submitting her fence proposal to Schulman on June 21, 2021, DRC member and President of the Board Mattlin communicated to Francis regarding her fence proposal. Mattlin told Francis on July 23, 2021, that her proposed fence was not permitted based on the Rules. On July 29, 2021, Mattlin informed Francis that the DRC would approve a fence with 20-foot-rear and 10-foot-side setbacks. It is undisputed that there were additional oral and email communications with Francis regarding her fence proposal from July to October 2021. The DRC sent Francis written conditional approval on October 11, 2021, approving a fence with 20-foot-rear and 10-foot-side setbacks, consistent with what she had previously been told.

{¶ 42} Further, although Francis has identified numerous procedural requirements of the Rules she claims were not strictly complied with, based on the

undisputed facts, Francis was not harmed as a result. As noted, damage or loss is an essential element of a claim for breach of contract. *DPLJR, Ltd*, 2008-Ohio-5872, at ¶ 16 (8th Dist.). "[T]o raise a genuine issue of material fact on the issue of damages and survive summary judgment, [Plaintiff] must set forth specific facts to show that she can establish, with reasonable certainty, the existence and amount of her loss." *Halpern v. Smith*, 2023-Ohio-1370, ¶ 33 (8th Dist.), citing *Cleveland v. Sohio Oil Co.*, 2001 Ohio App. LEXIS 5192, * 13 (8th Dist. Nov. 21, 2001). Whether Francis received her written notification from DRC in July when the first conversations occurred or in October when she actually received it, or received additional explanation, the DRC decision is unaltered by the timing or form. The DRC's position to require setbacks in the rear and on the sides remained consistent from the time Francis was first informed of it.

{¶ 43} With regard to the alleged failure on the part of the Board to vote to authorize filing the counterclaim, we note that Francis identified one Board member's lack of knowledge as to whether a vote had occurred and a lack of documents evidencing the vote to support her claim that there are genuine issues of material fact as to whether the Rules were properly followed. However, the undisputed evidence presented by Mattlin, as President of the Board, established that the Board did vote to approve defending against Francis's claims including authorization to explore recovery of its attorney fees. We find this approval substantially complied with the requirement that the Board approve pursuing any claim in court.

**{¶ 44}** As such, we find Signature Defendants did not materially breach the Rules in this case and Francis was not entitled to summary judgment on this issue.

### 3. Alleged Waiver of Fence Restrictions by Signature Defendants

**{¶ 45}** Francis argues the trial court erred by not finding that Signature Defendants waived enforcement of the Rules because they had approved other fences without the setback requirements that are being imposed on Francis's fence. We disagree that waiver occurred here.

**{¶ 46}** "Ohio law recognizes that restrictions such as the prohibition against constructing 'fences' are enforceable as a matter of law when the restrictions are reasonable." (Internal citations omitted.) *Salvekar*, 1994 Ohio App. LEXIS 2986, at *8 (8th Dist. July 7, 1994). Such restrictions are not disfavored when they relate to a general plan of which purchasers have notice. *Id.* There is no dispute that Francis was on notice of the general plan established by the Rules and that it applied to her Property.

**{¶ 47}** "In Ohio, restrictive-covenants become unenforceable when there has been a waiver or abandonment of the restrictions." *Santora v. Schalabba*, 2002-Ohio-2756, ¶ 10 (8th Dist.), citing *Romig v. Modest*, 102 Ohio App. 225 (2d Dist. 1956). To determine if there has been a waiver, the test is "whether there is still a substantial value in such restriction, which is to be protected[] . . . or whether the nature of the neighborhood has so changed that the restriction has become valueless to the property owners and as a result should not be enforced." *Id.* The party

asserting waiver had the burden of proving the waiver. *Emerald Estates Homeowner Assn. v. Albert*, 2009-Ohio-6627 (5th Dist.).

{¶ 48} In *Santora*, 11 out of 52 homes (over 20 percent) in the subdivision had fences that were erected without prior approval. The court found there was no substantial value in the restriction to be protected and that the association waived the enforcement of the fence deed restriction. *Santora* at ¶ 11.

{¶ 49} Francis identified 15 homes in the Signature of Solon community where, she argued, Signature Defendants did not apply the same restrictions being imposed on her fence. Assuming without deciding that prior approval had been required and was not secured prior to fence installation in each of those 15 instances, Francis has identified only 15 lots out of 354 lots in all of Signature of Solon, which is 4.2 percent of the homes in the Signature of Solon community. Moreover, it is undisputed that not all of the identified fences were subject to the same conditions and restrictions as Francis's property. For example, at least one property identified by Francis was in the Avalon section of Signature 2, where it did not abut the Golf Course and where different restrictions applied.

{¶ 50} Unlike *Santora*, here we find that the fence restriction still affords significant substantial value because the nature of the neighborhood has not been changed by the presence of fences on 4.2 percent of the Signature of Solon properties. As such, we find that Signature Defendants have not waived enforcement of the Rules.

{¶ 51} In light of the foregoing, we overrule Francis's first assignment of error.

**B. Waiver of the Enforceability of the Rules by Francis**

{¶ 52} In her second assignment of error, Francis challenges the trial court's conclusion that she waived any arguments that certain provisions within the Rules are unenforceable as to her because she admitted she is subject to the Rules and DRC Guidelines.

{¶ 53} "'[A]n admission in a pleading dispenses with proof and is equivalent to proof of the fact.'" *State v. Jimenez*, 2023-Ohio-4317 ¶ 18 (8th Dist.), citing *Shearer v. Creekview Broadview Hts. Homeowners' Assn.*, 2010-Ohio-5786, ¶ 13 (8th Dist.), quoting *J. Miller Express, Inc. v. Pentz*, 107 Ohio App.3d 44, 48 (9th Dist. 1995). We find that Francis waived any argument that the Rules are not enforceable against her when she admitted she is subject to them. In her Amended Complaint, Francis admitted "the property and Ms. Francis' ownership of the Property are subject to the terms and conditions of the Rules."[1] Amended Complaint, ¶ 15.

{¶ 54} Francis's second assignment of error is overruled.

---

[1] Francis defined the term "Rules" to include "[t]he Amended Master Declaration, the Amended Code of Regulations, and the DRC Policies . . ." Amended Complaint at ¶ 14.

## C. Judgment in Favor of Signature Defendants on Francis's Declaratory Judgment Claim

{¶ 55} Francis's third assignment of error argues that the trial court improperly granted Signature Defendants' summary judgment as to her claim for declaratory judgment. We disagree.

{¶ 56} Francis sought the following court determinations in her count for declaratory judgment:

1) Whether the Rules permit Francis to install her fence with an 18-inch setback from all of her property lines;

2) Whether the Rules require Francis to install her fence with the ten- and twenty-foot setbacks as conditionally approved by the DRC;

3) What real property is included in the "Golf Course" and/or "Golf Course Property" as defined in the Rules.

{¶ 57} "A declaratory judgment action is a creature of statute" as set forth under R.C. 2721.01 through 2721.15. *Olive Oil, L.L.C. v. Cleveland Elec. Illum. Co.*, 2021-Ohio-2309, ¶ 37 (8th Dist.).

> "The Declaratory Judgments Act was fashioned to provide remedies where none exists, in the situation where a particular controversy has not advanced to the point where a conventional remedy is reasonably available. The entertainment of a declaratory judgment action rests within the sound discretion of the trial court."

*Elam*, 2019-Ohio-457, at ¶ 33 (8th Dist.), quoting *D.H. Overmyer Telecasting Co. v. Am. Home Assur. Co.*, 29 Ohio App.3d 31, 32 (8th Dist. 1986).

{¶ 58} Under the Declaratory Judgment Act, "any person interested under a . . . written contract, or other writing constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . .

and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.03.

{¶ 59} "An appellate court reviewing a declaratory-judgment matter applies a de novo standard of review to the trial court's determination of legal issues in the case." *Amazing Tickets, Inc. v. Cleveland*, 2019-Ohio-1652, ¶ 8 (8th Dist.), citing *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1.

{¶ 60} Generally, declaratory relief is available to a plaintiff who can show that (1) a real controversy exists between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the rights of the parties. *Smith v. Gall*, 2023-Ohio-2692, ¶ 34 (8th Dist.), citing *Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507, 511 (1992).

{¶ 61} The trial court declared that, under the Rules, Francis's fence "violates restrictions in the Declaration and DRC Guidelines . . . . Plaintiff's fence, absent approval from the DRC, must be twenty feet from the Golf Course Property (the property [that] abuts Plaintiff's backyard). Moreover, fences that separate lots are not allowed without DRC approval."

{¶ 62} We find that the trial court's declarations are supported by the undisputed evidence in the record as discussed fully in resolving assignments of error Nos. 1 and 2. As such, the trial court did not err in granting Signature Defendants' summary judgment regarding Francis's claim for declaratory judgment.

{¶ 63} Francis's third assignment of error is overruled.

## D. Signature Defendants' Motion for Summary Judgment as to Francis's Claim for Breach of Fiduciary Duty

{¶ 64} With her fourth assignment of error, Francis argues the trial court erred by concluding the individual defendants, Mattlin, Mark Dively ("Dively"), Brooks Gerbitz ("Gerbitz"), and Schulman (collectively, the "Individual Defendants")[2] do not owe her fiduciary duties of loyalty or care. We agree with the trial court.

{¶ 65} To succeed on a claim for breach of fiduciary duty Francis must prove: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Harwood v. Pappas & Assocs., Inc.*, 2005-Ohio-2442, ¶ 26 (8th Dist.).

{¶ 66} The trial court held that the Individual Defendants did not owe Francis any fiduciary duty. The trial court applied *Wood v. Cashelmara Condo Unit Owners Assn.*, 2022-Ohio-1496 (8th Dist.), to support its finding. Francis is right to point out that *Wood* deals with a condominium association and its relevant statute R.C. 5311.01 whereas this case is concerned with a planned community governed by R.C. 5312.01. We find, however, that *Wood* is analogous and instructive, since it involved a planned residential community operated by nonprofit corporations and that was subject to deed restrictions in the form of declarations.

{¶ 67} This court held in *Wood* that the condominium association board did not owe a fiduciary duty to the individual residents because the board's obligation is

---

[2] Mattlin and Dively are members of the HOA Board. Each of the Individual Defendants is a member of the DRC.

to make the best decisions for the long-term management and interests of the association, not the individual homeowners. *Id.* at ¶ 34. The *Wood* Court also found that the individual members of the board only owed fiduciary duties to the board itself, not to the individual members. *Id.* at ¶ 32-33.

{¶ 68} Under Francis's theory, each individual member of the Board and of the DRC would have the duty to act in the best interest of each individual resident of the Signature of Solon community, even though those residents may have diametrically opposed interests. Francis does not identify any source of law to establish that the Individual Defendants owe her fiduciary duties in their individual capacities. As such, we find that the individual defendants do not owe Francis fiduciary duties.

{¶ 69} Furthermore, as Signature Defendants argue, Section 8.9 of the Declaration states that "[n]o Member of the DRC shall be liable to . . . any Member or any Person for his acts or omissions or failure to act in any particular manner." It is undisputed that the Declaration applies to Francis. Based on this clause, Francis's effort to hold the Individual Defendants liable for breaches of fiduciary duties fails.

{¶ 70} Based on the foregoing, Francis's fourth assignment of error is overruled.

**E. Motions to Strike Affidavits of Schulman and McDougall**

{¶ 71} Francis's fifth assignment of error alleges the trial court abused its discretion by denying her motions to strike the affidavit of Don McDougall

("McDougall Affidavit") and the two affidavits of Charles Schulman ("Schulman Affidavits"). According to Francis, these affidavits constitute parol evidence, contain inadmissible hearsay and improper legal conclusions, and include unsworn and unauthenticated "evidence."

{¶ 72} We review a court's denial of a motion to strike for an abuse of discretion. *RBS Citizens, N.A. v. Zigdon*, 2010-Ohio-3511, ¶ 8 (8th Dist.), citing *Abernethy v. Abernethy*, 2003-Ohio-1528, ¶ 7 (8th Dist.). An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Id.*, citing, *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 73} Pursuant to Civ.R. 56(E), affidavits that support summary judgment motions "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." Absent evidence to the contrary, an affiant's statement that his or her affidavit is based on personal knowledge will suffice to meet the requirement of Civ.R. 56(E); *Woods Cove v. Brazil*, 2019-Ohio-4348, ¶ 13 (8th Dist.).

{¶ 74} The first Schulman Affidavit was submitted in support of Signature Defendants' brief in opposition to Francis's motion for partial summary judgment. The McDougall Affidavit and second Schulman Affidavit were submitted in support of Signature Defendants' motion for summary judgment.

{¶ 75} In his affidavit, McDougall attests that he is the general manager of the Signature of Solon Country Club "which includes an 18-hole golf course (the "Golf Course") . . . located within the Signature of Solon community. The property is titled in the name of . . . Arcis." McDougall further asserts that, "As the General Manager, I am personally knowledgeable about and familiar with the landscaping and geographic boundaries of the Golf Course." He further attests that:

> 5. The non-wooded area behind the Eighth Hole's green and surrounding rough is owned and maintained by the Club. This area is surrounded by the white boundary in the overhead photo attached hereto as Exhibit 1.
>
> 6. As the owner of the Golf Course, Arcis can change (and has changed) the configuration of holes on the Golf Course by shifting hole placement, green location, or other landscaping features.
>
> 7. Arcis considers the area identified in Exhibit 1, associated with the Eighth Hole and immediately abutting [Francis's] Property, as part of the Golf Course, and it is used by the golfers, such that Arcis would expect and require a setback of at least twenty (20) feet from the edge of that area before any fence could be built on [Francis's] Property.
>
> 8. Arcis reserves the right to, and would expect to be able to, further use the above-referenced area identified on Exhibit 1 for reconfiguring the Eighth Hole if future changes were made to the Golf Course.

{¶ 76} Francis argues that paragraphs five through eight should be excluded as improper parol evidence to the extent they attempt to interpret Declaration sec. 3.7(e) and the definition of the term "Golf Course." Francis also argues that the McDougall Affidavit contains hearsay by failing to establish the requisite knowledge as to what the golf course company does, owns, requires, or expects and McDougall does not confirm any authority for him to testify on behalf of the golf course. We disagree.

{¶ 77} The parol evidence rule is

> a principle of common law providing that a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing. The rule operates to prevent a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final written form, and it assumes that the formal writing reflects the parties' minds at a point of maximum resolution and, hence, that duties and restrictions that do not appear in the written document were not intended by the parties to survive.

*Bellman v. Am. Internatl. Group*, 2007-Ohio-2071, ¶ 7 (internal citations omitted). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). *State v. Wingfield*, 2019-Ohio-1644, ¶ 30 (8th Dist.).

{¶ 78} We find that the McDougall Affidavit does not constitute parol evidence because it is not evidence regarding the terms of a contract and is not trying to modify the terms of the applicable contract here. McDougall's testimony is not regarding the terms of any agreement, but instead his personal knowledge about the country club and its property, about which he is qualified to testify since he is the general manager of the country club, which includes the Golf Course. Further, we find that affidavit does not contain hearsay because there are no statements by others being made and offered as evidence. As such, we find the trial court did not abuse its discretion by denying Francis's motion to strike the McDougall Affidavit.

{¶ 79} Francis also takes issue with each of Schulman's two affidavits. Schulman is the president of Carlyle Management Co. ("Carlyle"), the management

agent for the Signature of Solon community.  He is also one of the five members of the DRC.

{¶ 80}  In his first affidavit, dated February 27, 2023, Schulman attested in paragraphs four and five as follows:

> 4. A major distinction between these two areas is that "Signature 1" is surrounded by an 18-hole golf course, also known as "Signature of Solon" (the "Golf Course"), while "Signature 2" shares no borders with this Golf Course.

> 5. Attached hereto as Exhibits 1, 2, and 3 respectively, are the Association's (1) Amended Master Declaration of Covenants, Conditions, Easement and restrictions of Signature of Solon; (2) Amended Code of Regulations of Signature of Solon Master Association, Inc.; (3) the Signature of Solon Master Association General Rules and Policies and Design Review Committee Policies, which prescribes, inter alia, the guidelines for the Signature of Solon Design Review Committee.

{¶ 81}  Francis argues that paragraph four does not provide any foundation and is not based on personal knowledge, which renders the first affidavit flawed. Similarly, Francis argues that paragraph five is a self-serving conclusory statement, which is an inadmissible legal conclusion.  We disagree.

{¶ 82}  As president of Carlyle and as a member on the DRC, Schulman testified to his personal knowledge about the layout of Signature 1 and 2 as well as the governing documents for the Signature of Solon community.  We find the trial court did not abuse its discretion by denying Francis's motion to strike the first Schulman Affidavit.

{¶ 83}  In his the second affidavit, dated June 1, 2023, Schulman testified in pertinent part as follows:

8. Homes in Signature 1 and Signature 2 generally have a uniform look throughout the community. Attached hereto as Exhibit 1 are photographs accurately representing the look of homes in the Signature 1 and Signature 2 communities.

9. Townhomes in Avalon are of a character distinctly different than the rest of the community. Attached hereto as Exhibit 2 are photographs accurately representing the look of homes in the Avalon community

Francis takes issue with paragraphs eight and nine arguing that Schulman does not testify to any personal knowledge to authenticate the photographs included as exhibit Nos. 1 and 2. The affidavit states that the attached exhibit No. 1 shows houses that represent the look of homes in the Signature 1 and 2 communities and that exhibit No. 2 shows the look of homes in the Avalon community. Francis argues that Schulman cannot authenticate these photographs because he did not take them himself. We disagree.

{¶ 84} Ohio courts have held that a "'photograph is admissible if it is shown to be an accurate representation of what it purports to represent. It is unnecessary to show who took the photograph or when it was taken, provided there is testimony that the photograph is a fair and accurate representation of what it represents.'" *State v. Padgette*, 2020-Ohio-672, ¶ 12 (8th Dist.), quoting *State Farm Mut. Auto. Ins. Co. v. Anders*, 2012-Ohio-824, ¶ 30 (10th Dist.).

{¶ 85} Here we find that Schulman properly authenticated the exhibits by attesting that to his personal knowledge they accurately represent houses in the Signature 1, Signature 2, and the Avalon communities. As such, we find the trial court did not abuse its discretion by denying Francis's motion to strike the second Schulman Affidavit.

{¶ 86} Francis's fifth assignment of error is, therefore, overruled.

## F. Francis's Claims Trial Court Erred By Ignoring Planned-Community Law

{¶ 87} Francis argues that Signature Defendants failed to provide her access to the HOA's books and records; minutes of the HOA, the Board, and the DRC meetings; and membership rosters. According to Francis, these failures violate R.C. 5312.13, which Francis argues the trial court should have applied.

{¶ 88} R.C. 5312.13 states:

> The owners association . . . shall comply with any covenant, condition, and restriction set forth in any recorded document to which they are subject, and with the bylaws and rules of the owners association, as lawfully amended. Any violation is grounds for . . . any owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action.

Francis argues the statute imposes liability for attorney fees incurred by a homeowner seeking legal redress for the association's violation of any covenant, condition, or restriction set forth in any recorded document. Francis argues the trial court should have applied R.C. 5312.13 and awarded her costs and attorney's fees.

{¶ 89} The undisputed evidence in the record shows that Francis made numerous requests for board minutes and membership registration to Signature Defendants. The evidence also shows that Signature Defendants made efforts to comply with all the requests by providing documents that existed and explaining to Francis that some requests could not be fulfilled because the requested documents did not exist. The undisputed evidence shows at least one time when the request

was made there were no records that existed, but once responsive documents were created, they were provided to Francis by Signature Defendants.

{¶ 90} Francis states in her appellate brief that "Defendants ultimately complied with Ms. Francis' record requests . . . ." As such, we find this assignment of error is moot.

{¶ 91} Francis's sixth assignment of error is, therefore, overruled.

### G. Trial Court's Grant of Summary Judgment in Favor of Francis

{¶ 92} The trial court awarded summary judgment in favor of Francis as to Signature Defendants' counterclaim for breach of contract. In their cross-appeal, Signature Defendants argue that the trial court erred by finding against them on their counterclaim, which asserted Francis breached the mandatory-mediation clause under the Rules. The magistrate's decision concluded the relevant provision was ambiguous and construed it against Signature Defendants. The trial court adopted the magistrate's decision and specifically found that Signature Defendants waived enforcement of the mandatory Alternative Dispute Resolution ("ADR") provision.

{¶ 93} As discussed above, we review the trial court's award of summary judgment de novo. To establish a breach of contract, Signature Defendants needed to establish (1) the existence of a contract, (2) that the nonbreaching party performed on the contract, (3) that the breaching party failed to perform its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages flowing from the breach. *See Holliday v. Calanni Enters.*, 2021-

Ohio-2266, ¶ 20 (8th Dist.), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, (2d Dist. 1994).

{¶ 94} Signature Defendants' counterclaim for breach of contract alleges that Francis was required to but did not submit her claims to ADR, specifically mediation. Section 15.8 of the Declaration states:

> Any dispute arising out of this Agreement, which is not resolved pursuant to the hearing procedure provisions herein or in the [Code of Regulations], shall first be submitted, within thirty days of the date the dispute arises, to mediation in Cleveland, Ohio, pursuant to the Commercial Arbitration Rules and Mediation Procedures ("Procedures") of the American Arbitration Association. Any agreement regarding settlement reached at the mediation shall be reduced to writing and signed by the parties, no later than seven days after the conclusion of the mediation. If the mediation does not result in settlement, then the dispute shall be submitted, no later than fourteen days after the mediation, to arbitration before a single Arbitrator, which shall be conducted pursuant to the same Procedures and shall occur no later than forty-five days after the Demand for Arbitration is filed with the American Arbitration Association.

{¶ 95} Signature Defendants claim that they are entitled to damages because of this breach of Section 15.8 of the Declaration in the amount of their fees and expenses at trial.

{¶ 96} We note that while it is undisputed that Francis did not initiate mediation before filing suit, Signature Defendants likewise did not take action to pursue mediation. After Francis filed her lawsuit, Signature Defendants filed their breach-of-contract counterclaim and sought to have Francis's claims dismissed for failure to follow the ADR procedures in Sec. 15.8. Signature Defendants also

proceeded with the litigation, never once seeking to have the litigation stayed or to compel mediation or arbitration.

{¶ 97} According to Francis, the dispute over her proposed fence is not subject to ADR pursuant to Sec. 15.8 because that provision relates only to disputes over fines or penalties imposed on a homeowner by the HOA (i.e., those disputes subject to "hearing procedure provisions" in the Declaration). On the other hand, Signature Defendants maintain that Sec. 15.8 "simply clarifies that a premediation hearing procedure applies in certain instances." That is, Signature Defendants argue all disputes – whether they go through premediation hearing procedures or not – must be mediated first and then arbitrated if mediation is unsuccessful.

{¶ 98} Francis also argues that the language of Sec. 15.8 is ambiguous because it is susceptible of two equally reasonable interpretations as regards the meaning of the phrase, "which is not resolved pursuant to the hearing procedure provisions herein or in the [Code]."

{¶ 99} It is well-settled that contract language is ambiguous if "the language is susceptible of two or more reasonable interpretations." *Clifton Steel Co. v. Trinity Equip. Co.*, 2018-Ohio-2186, ¶ 11 (8th Dist.), citing *Co. Wrench v. Andy's Empire Constr., Inc.*, 2010-Ohio-5790, ¶ 19 (8th Dist.). Absent persuasive evidence of the parties' intent at the time of drafting, it may be appropriate to construe an ambiguous provision against the drafter.

> "It is a primary rule of contract construction and interpretation that when confronted with an ambiguous contract, a court must first examine parole evidence to determine the parties' intent." Only if

doing so fails to clarify the meaning of the contract may the trial court proceed to examine secondary rules of construction, including the rule that ambiguities are construed against the drafter.

*Envision Waste Servs., LLC v. Cty. of Medina*, 2017-Ohio-351, ¶ 15 (9th Dist.), quoting *Michael A. Gerard, Inc. v. Haffke*, 2013-Ohio-168, ¶ 14 (8th Dist.). "Ohio courts have generally resolved contract ambiguities against the drafter only where parties lacked equal bargaining power to select contract language." *Clifton Steel Co.* at ¶ 19.

{¶ 100} We find that Sec. 15.8 is susceptible of two reasonable interpretations as set forth above. No extrinsic evidence was presented to the trial court regarding the intent behind Sec. 15.8 or the process by which it was adopted. It is undisputed that Francis owns just one of the 354 homes within the Signature of Solon community subject to the terms of the Declaration.

{¶ 101} Under these circumstances, the trial court did not err in adopting the magistrate's decision awarding summary judgment to Francis. Signature Defendants' first cross-assignment of error is overruled.

### H. Signature Defendants' Motion to Strike Francis's Expert Reports

{¶ 102} Signature Defendants allege in their second cross-assignment of error that the trial court erred by not striking Francis's expert report by Brian Siebenthal that was included as an exhibit in support of her motion for summary judgment.

{¶ 103} In their brief, Signature Defendants admit that because the trial court granted them summary judgment as to Francis's breach-of-contract claim, the admission of Francis's expert report is immaterial. We agree.

{¶ 104} As such, we find Signature Defendants' second cross-assignment of error is moot and overrule it.

{¶ 105} Judgment affirmed.

It is ordered that appellees/cross-appellants recover from appellant/cross-appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR