[Cite as *Mapleview Operating Co. v. Valletto*, 2025-Ohio-1898.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| MAPLEVIEW OPERATING COMPANY, LLC d.b.a. MAPLEVIEW COUNTRY VILLA, | CASE NO. 2024-G-0037 |
| Plaintiff-Appellee, | Civil Appeal from the Chardon Municipal Court |
| - vs - | |
| MICHAEL VALLETTO, | Trial Court No. 2023 CVF 00699 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: May 27, 2025
Judgment: Reversed and vacated

*Yehudah A. Witkes*, Witkes Law Firm, LLC, P.O. Box 21760, South Euclid, OH 44121 (For Plaintiff-Appellee).

*Leslie A. Weiss*, Halberg & Associates, Co., LPA, 198 East Aurora Road, Northfield, OH 44067 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Michael Valletto, appeals from the judgment of the Chardon Municipal Court in favor of plaintiff-appellee, Mapleview Operating Company, on its claims for breach of contract. For the following reasons, we reverse and vacate the judgment of the lower court and enter judgment in favor of Valletto.

{¶2} On September 25, 2023, Mapleview Operating Company, doing business as Mapleview Country Villa, filed a Complaint against Valletto. The Complaint alleged that it had provided services, which included rehabilitation, under a contract with Valletto

and he had not paid the balance remaining for such services. It raised three claims for relief relating to the failure to pay and requested a judgment in the amount of $8,640.

{¶3} Valletto filed an Answer on October 26, 2023, raising affirmative defenses, including that the claims were barred by Mapleview's "own acts of negligence and/or breach" for failing to "submit a bill to Defendant's insurance company as required under the contract." Both parties filed motions for summary judgment, which were denied.

{¶4} A trial was held on March 21, 2024. The following pertinent testimony and evidence were presented:

{¶5} Umiko Hannan, former business office manager of Mapleview Country Villa, testified regarding Valletto's stay at Mapleview. The parties entered a Consent to Treat & Admission Agreement, in which Mapleview agreed to provide room and board, as well as nursing and other services to Valletto. Paragraph A4 provided:

> **Billing to Health Insurance Plans.** Mapleview Country Villa will bill the Resident's health insurance plan as a service to You. Unless otherwise agreed upon between Mapleview Country Villa and the Resident's health insurance plan: You agree to pay Mapleview Country Villa its private pay rate if the plan does not agree to pay Mapleview Country Villa directly; and You also agree to pay Mapleview Country Villa directly and in full upon receipt of an invoice if the Resident's insurance plan does not pay Mapleview Country Villa within forty-five (45) days of billing.

Pursuant to Hannan and a letter from Cigna, Valletto's medical insurer, Cigna agreed to pay for his care at the facility from August 12 to October 28, 2022.

{¶6} Hannan described the process generally followed when obtaining a prior approval or preauthorization from an insurance provider. Mapleview typically contacts the insurer and if coverage is not obtained, the patient is notified and given the option to appeal. If a prior approval is given, during the course of the patient's stay, Mapleview

Case No. 2024-G-0037

would submit documentary evidence showing the patient's progress every 7 to 10 days as requested by the insurance company. She described: "at the time we send in information that is like a renewal of initial authorization until they decided to discontinue covering him, then we really don't have any rights as a facility to ask for new precertification, [the] only option is that patient can appeal and we do give all the option[s] with [the] resident." She testified that the "last authorization request we sent it was October 25th of 2022 and CIGNA reviewed the information and gave him cut on October 28th, 2022." (Sic) Hannan testified that Mapleview did not attempt to bill Cigna past October 28 or submit a second request for authorization. It was generally not Mapleview's practice to request authorization beyond that period initially covered. Hannan indicated: "we gave [Valletto] the option to appeal and I believe he did."

{¶7} Hannan testified that she spoke with Valletto on October 28 and explained that he would need to pay privately if he remained in the facility after that date. He stated that he would remain in the facility regardless of insurance coverage but would not pay. On October 31, Valletto was given a 30-day discharge notice. According to Hannan, this was appealed to the Ohio Department of Health which ordered that Valletto must pay or be discharged. Valletto chose to return home on November 25, 2022. Hannan testified that the balance due was $8,640 for the days he remained in Mapleview past October 28.

{¶8} Brian Valletto is Valletto's brother. He testified that Valletto sustained serious injuries following an accident which resulted in his Mapleview admission. He testified that by October, Valletto had made some progress but he believed Valletto needed additional treatment. Cigna did not approve a request from Valletto to transfer to another facility in Beachwood. Brian testified that Valletto appealed the decision to

Case No. 2024-G-0037

discharge him from Mapleview (the Department of Health appeal) as well as the decision by Cigna not to cover treatment at the Beachwood facility. No appeal was filed from the authorization of the stay at Mapleview. Brian indicated that he had requested Mapleview bill Cigna for the time Valletto remained in its care after October 28, but this was not done.

{¶9} In an April 12, 2024 Magistrate's Decision, the magistrate recommended judgment in favor of Mapleview in the amount of $8,640. It found the dispositive issue was "who was responsible for securing additional dates of coverage from CIGNA." It found only one witness addressed this, Hannan, who was "qualified and experienced to answer this question" and indicated it was the patient's responsibility to appeal Cigna's denial of coverage. It found Valletto "knowingly incurred the private pay balance while trying to get CIGNA's decision overruled." It rejected the argument that Paragraph A4 of the contract created a condition precedent under which Mapleview assumed the duty to secure additional covered days from Cigna and determined that this clause "confirms exactly what Plaintiff told Defendant the arrangement would be in the event that the patient extended beyond the last date that CIGNA contractually agreed to pay." Valletto filed objections to the magistrate's decision. The trial court overruled the objections, finding no error of law or defect in the decision, and adopted the magistrate's decision.

{¶10} Valletto timely appeals and raises the following assignments of error:

{¶11} "[1.] The trial court erred by overruling [the objections to] the magistrate's decision, and rendering judgment for the plaintiff, where the plaintiff was contractually required to submit a request for preauthorization to the defendant's insurance company and bill the insurance company for services rendered, but failed to do either, thereby each time, breaching the terms of the consent to treat & admission agreement."

Case No. 2024-G-0037

{¶12} "[2.] The trial court erred by overruling the [objections to the] magistrate's decision, and rendering judgment for the plaintiff, where the plaintiff wrongfully advised defendant that he was no longer covered by Cigna Insurance and Cigna Insurance decided to discontinue covering for him. Plaintiff's statements were false and misleading and not made in good faith."

{¶13} "[3.] The trial court erred by overruling the [objections to the] magistrate's decision, and rendering judgment for the plaintiff, where the plaintiff wrongfully testified to the court that the defendant had appealed the decision denying continued coverage for services at their facility beyond October 28, 2022, when in fact, defendant appealed an Ohio state decision and furthermore, appealed a decision after requesting authorization to be admitted into the Cleveland Clinic rehabilitative facility."

{¶14} "[4.] The trial court erred by overruling the [objections to the] magistrate's decision, and rendering judgment for the plaintiff, where the defendant requested an additional hearing based on information that was evidence that plaintiff made fraudulent statements that preauthorization was submitted to Cigna by them for extending coverage and defendant discovered that said submission for certification was never received by Cigna and not existent in the Cigna records held on behalf of the defendant."

{¶15} "When reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion in adopting the decision." (Citation omitted.) *Hemme v. Hakli*, 2023-Ohio-2726, ¶ 28 (11th Dist.). An abuse of discretion occurs where a court fails "'to exercise sound, reasonable, and legal decision-making.'" (Citation omitted.) *Slodov v. Eagle Ridge Subdivision Property Owner's Assn., Inc.*, 2023-Ohio-3688 (11th Dist.). "However, when

Case No. 2024-G-0037

questions of law, such as the interpretation of a contract, are presented, the court of appeals will review the lower court's judgment de novo." *Banks v. Shark Auto Sales LLC*, 2022-Ohio-3489, ¶ 7 (11th Dist.).

{¶16} In his first assignment of error, Valletto argues that Mapleview breached the parties' contract by failing to request preauthorization and to bill Cigna on his behalf. In his second assignment of error, Valletto argues that Mapleview did not act in good faith in relation to the contract for several reasons, most significantly that Mapleview rejected Valletto's requests to bill Cigna.

{¶17} "To establish a breach of contract claim, a party must demonstrate (1) the existence of a binding contract or agreement; (2) the non-breaching party performed its contractual obligations; (3) the breaching party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach." *Cafaro-Peachcreek Joint Venture Partnership v. Spanggard*, 2022-Ohio-4468, ¶ 28 (11th Dist.).

{¶18} Valletto argues that "it is clear there was a contractual duty for Mapleview to request for preauthorization in connection with services provided. Both through contract and pursuant to the Ohio Revised Code, Mapleview had the duty to secure preauthorization for medical services."

{¶19} It is undisputed that no further authorization was sought by Mapleview beyond the initial preauthorization running through October 28. However, the contract between Valletto and Mapleview contains no provision referencing a requirement to seek prior approvals or preauthorizations from the insurance company.

{¶20} Valletto also argues that R.C. 3923.041(C) required Mapleview to seek a

Case No. 2024-G-0037

second prior authorization. That statute provides that insurers "shall not retroactively deny a prior authorization for a health care service" when certain conditions are met, one of which is that "[t]he health care practitioner submits a prior authorization request." R.C. 3923.041(C). While it does contemplate a health care practitioner submitting a prior authorization, it does not set forth a blanket requirement for health practitioners to seek prior authorizations in every case; it is specific to retroactive denial under specified circumstances. R.C. 3923.041(A)(8) recognizes that prior authorization may be sought under insurance policies in different methods: "'Prior authorization requirement' means any practice implemented by . . . a sickness . . . insurer or a public employee benefit plan in which coverage of a health care service . . . is dependent upon a *covered person or a health care practitioner* obtaining approval from the insurer or plan prior to the service . . . being performed, received, or prescribed." (Emphasis added.) Valletto fails to demonstrate how this statute requires submission of a second prior authorization by a health care provider in these circumstances.

{¶21} The lower court, and thereby Valletto's appellate brief in part, focused on "who was responsible for securing additional dates of coverage from CIGNA," finding this was the "dispositive issue." However, the relevant question is not who was responsible for seeking preauthorization, but, rather, whether Mapleview fulfilled its express contractual obligation to bill Cigna regardless of preauthorization status. By conflating these distinct issues, the lower court erroneously diverted attention from the plain contract language. The significant issue in the present matter arises in relation to Valletto's second argument, that there was a "further breach" in the failure to submit his bill to Cigna. We find this argument has merit.

Case No. 2024-G-0037

{¶22} There is no factual dispute that Cigna was billed and paid for the period from August 12 to October 28. However, there is also no dispute that Mapleview did not seek payment from Cigna for the period following that service but instead billed Valletto directly. Paragraph A4 of the parties' contract provides: "Mapleview Country Villa will bill the Resident's health insurance plan as a service to You. Unless otherwise agreed upon between Mapleview Country Villa and the Resident's health insurance plan: You agree to pay Mapleview Country Villa its private pay rate if the plan does not agree to pay Mapleview Country Villa directly; and You also agree to pay Mapleview Country Villa directly and in full upon receipt of an invoice if the Resident's insurance plan does not pay Mapleview Country Villa. . ." Hannan testified that Mapleview did not attempt to bill Cigna past October 28 for the services provided following the expiration of the period of preauthorization.

{¶23} Paragraph A4 establishes the clear sequence of events contemplated by the parties: (1) Mapleview bills insurance; (2) insurance either agrees or does not agree to pay Mapleview directly; and (3) if insurance does not pay within forty-five days of billing, Valletto pays Mapleview directly. Mapleview did not comply with the term of the contract stating that it "will bill" insurance. Mapleview's unilateral decision to bypass step one fundamentally altered this agreed-upon sequence, effectively rewriting the contract without Valletto's consent.

{¶24} Arguably, there was a condition precedent to Valletto's obligation to pay for services, i.e., Mapleview billing his insurance plan. "The Supreme Court of Ohio has defined a 'condition precedent' as 'one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance

Case No. 2024-G-0037

of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties.'" *Wroblesky v. Hughley*, 2021-Ohio-1063, ¶ 45 (11th Dist.), citing *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1 (1917), syllabus. "[A] contract or contract right is formed when all conditions precedent are satisfied." (Citation omitted.) *Gajovski v. Estate of Philabaun*, 2011-Ohio-868, ¶ 28 (11th Dist.); *Meeker R & D, Inc. v. Evenflow Co., Inc.*, 2016-Ohio-2688, ¶ 106 (11th Dist.) ("when a condition precedent is not satisfied, the parties to a contract are not obligated to the terms of the agreement"). "Whether a provision in a contract constitutes a condition precedent . . . is a question of intent; and the intention will be ascertained by considering the language not only of the particular provision, but of the whole contract and its subject-matter." *Wroblesky* at ¶ 45, citing *Mumaw* at syllabus.

{¶25} The provision that Mapleview "will bill" insurance immediately precedes the requirement for Valletto to pay if the insurance plan does not do so. Since Valletto is required to pay only if insurance does not do so, the promise to bill the insurance plan may be considered as an obligation precedent to Valletto's contractual promise to pay. While the provision may not expressly state that billing the insurance company is a condition precedent to Valletto's obligation to pay Mapleview, it appears that this was the intent of the parties.

{¶26} Nonetheless, even presuming this did not constitute a condition precedent, the language stating that Mapleview "will bill" the insurance is still an obligation under the contract. The contract explicitly states that such billing will occur. There is no dispute that Mapleview did not bill insurance for the period in dispute. Failure to do so deprives Valletto of the benefit of his insurer potentially paying the billed amount. Thus, Mapleview

Case No. 2024-G-0037

did not perform an obligation under the contract. Where a party fails to perform its material obligations under a contract, this excuses the other party from performance. *Comstock Homes, Inc. v. Smith Family Trust*, 2009-Ohio-4864, ¶ 8 (9th Dist.).

**{¶27}** An interpretation that Mapleview was not required to bill insurance would render the "will bill" clause meaningless. "In interpreting a contract, we are required, if possible, to give effect to every provision of the contract." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 54. While it appears Mapleview presumed that the insurer would not pay, the contract does not provide that Mapleview will bill the insurer only if it believes payment is likely to occur.

**{¶28}** It cannot be argued that Mapleview substantially performed under the contract such that the obligation of Valletto to pay must be enforced. To recover upon a contract, substantial performance is required by the parties and "slight departures, omissions, and inadvertences should be disregarded." (Citation omitted.) *Davis v. J & J Concrete*, 2019-Ohio-1407, ¶ 20 (11th Dist.). It is evident that billing was a significant issue in this contract since it goes directly to the obligations of Valletto.

**{¶29}** To the extent that it could be argued that the statement that Mapleview "will bill" is ambiguous since it is characterized as a service rather than an obligation, we would turn to consideration of the parties' intent. As noted above, it appears there was intent to bill insurance prior to billing Valletto. In the case where intention cannot be discerned, a contract provision may be strictly construed against the party that was the drafter of the contract or the party which had unequal bargaining power. *Sutton Bank v. Progressive Polymers, L.L.C.*, 2020-Ohio-5101, ¶ 15. We observe that Valletto, as the patient, had limited understanding of how medical billing functions while Mapleview, the drafter of the

Case No. 2024-G-0037

contract, was in a far superior position to understand and navigate such billing procedures.

{¶30}  The foregoing concerns are also buttressed by Valletto's argument under his second assignment of error that Mapleview did not act in good faith when it rejected his requests that Mapleview bill Cigna.

{¶31}  This court has held that "[p]arties to a contract are 'bound toward one another by standards of good faith and fair dealing.'" (Citation omitted.)  *Wilmington Savs. Fund Soc., FSB v. Medvec Properties LLC*, 2019-Ohio-4133, ¶ 25 (11th Dist.), citing *McWreath v. Cortland Bank*, 2012-Ohio-3013, ¶ 27 (11th Dist.).  The duty of good faith is a "'compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.'" (Citation omitted.)  *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443-444 (1996).  Mapleview's determination that billing would be futile, without actually attempting to bill Cigna, violated this duty.  This is particularly concerning given the power imbalance between healthcare providers and patients, who typically lack expertise in navigating complex insurance and billing systems, as observed above.

{¶32}  In light of the foregoing, we must consider a few practical implications of this opinion.  First, we emphasize that this decision does not require healthcare providers to continue providing services indefinitely whenever insurance coverage is terminated. Rather, it simply requires them to fulfill their express contractual obligations—such as billing insurance as promised—before seeking payment directly from patients.

{¶33}  Further, the entry of judgment in favor of Valletto raises questions regarding

Case No. 2024-G-0037

further action that may be taken by Mapleview.  While it may seek to bill Cigna and then pursue Valletto for payment if Cigna denies coverage, there are legitimate concerns about timing and filing deadlines that may make Mapleview unable to cure its breach.  This serves to further underscore the fact that healthcare providers must adhere to their contractual obligations and do so in a timely manner.

{¶34}  The first and second assignments of error are with merit.

{¶35}  Valletto's third and fourth assignments of error provide alternate grounds for reversing the trial court's judgment, including that damages in favor of Mapleview were improper due to misrepresentations made to the court and that an evidentiary hearing should have been held due to "fraudulent statements" made at trial.  It is unnecessary to address these issues given this court's reversal on the first assignment of error.  No further relief is necessary since we find that Mapleview failed to comply with the terms of the contract and judgment should have been granted in Valletto's favor.

{¶36}  The third and fourth assignments of error are moot.

{¶37}  The judgment of the Chardon Municipal Court in favor of Mapleview on its claims for breach of contract is reversed and vacated and judgment is entered in favor of Valletto.  Costs to be taxed against appellee.


JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-G-0037

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, the judgment of the Chardon Municipal Court in favor of Mapleview on its claims for breach of contract is reversed and vacated and judgment is entered in favor of Valletto.

Costs to be taxed against appellee.

|  |
| --- |
| JUDGE MATT LYNCH |

|  |
| --- |
| JUDGE JOHN J. EKLUND, |
| concurs |

|  |
| --- |
| JUDGE EUGENE A. LUCCI, |
| concurs |

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
| --- |
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2024-G-0037